34   1
63   591

34   1
69   352

34   1
72   549

34   1
74   572
74   573

34   1
77   365

---

## HARRIET C. JONES vs. THE CITY OF NEW HAVEN.

The charter of the city of New Haven, which was accepted by the city, gave the common council of the city power to make by-laws for the regulation and protection of trees in the public squares and streets, and the common council passed a by-law imposing a fine on any person who should cut or otherwise injure any shade tree in any public square or street without certain special license. A dead limb, which the city had negligently allowed to remain upon a tree in a public square, fell upon and injured the plaintiff who was passing under. Held, that the city was liable in damages.

When a public duty is imposed upon a town or other quasi corporation without its consent, express or implied, such town or corporation is not liable to an action for negligence in respect to such duty, unless a right of action is given by statute.

Where duties of a judicial nature are imposed upon any such corporation, the execution of which requires the exercise of deliberation, judgment and discretion, the corporation is exempt from all responsibility by action for the motives which influence it and for the manner in which such duties are performed. But where judicial duty ends and ministerial duty begins, there immunity ceases and liability attaches.

But where a corporation is charged with the performance of some public duty as a condition, express or implied, upon which it holds its corporate powers; or

VOL. XXXIV.      1

where a grant is made to a corporation of some special power or privilege at its request, out of which its public duties grow; or where some special duty is imposed upon a corporation, not belonging to it under the general law, with its consent;—in these and like cases, if the corporation is guilty of negligence in the discharge of such duty, thereby causing injury to another, it is liable to an action in favor of the party injured.

TRESPASS on the case for an injury to the plaintiff by the falling upon her of a dead limb from a tree in a public square in the city of New Haven; brought to the superior court in New Haven county. The first count of the declaration was as follows :—

That the defendants are a body corporate duly incorporated by the laws of this state; that in and by the charter incorporating them it is provided that the defendants may, through their common council, make such by-laws as they may see fit to make, in relation to the cutting, breaking or injury of trees and the protection and preservation of trees in the streets, highways and public squares of said city; that in pursuance of the said power so conferred upon them by their charter, the defendants, through their court of common council, afterwards and before the commission of the grievances hereinafter named, passed a certain by-law, by which it was provided that no person should, without the approbation in writing of the mayor and aldermen first obtained, cut, bruise, destroy, or aid in cutting, bruising, destroying, or injuring any tree which is or shall be set out, planted or standing for shade, ornament or use in any of the public streets or highways of said city, under pain of certain penalties in said by-law prescribed; that the defendants, at the time of and long before the commission of the grievances hereinafter mentioned, undertook and assumed upon themselves the task of superintending, regulating and putting in proper condition all the trees situated upon said public squares as aforesaid, and agreed that they would superintend, regulate and put in proper condition all such trees so situated upon said public squares as aforesaid, and thereupon the defendants, at the time of the commission of the said grievance hereinafter mentioned, and long before, entered upon such task of so regulating and putting in proper

condition said trees, and did in fact regulate, superintend and pretend to put in proper condition all trees so situated on said public squares; and the plaintiff avers that by reason of the facts hereinbefore set forth, it became and was the duty of the defendants to take proper care of all such trees planted or standing on any of the public squares of said city, and to use due care and diligence in and about the superintending and regulating of said trees, and particularly to remove all dead, decayed and broken limbs remaining upon said trees; and the plaintiff says that the defendants, their duty in this behalf not regarding, so grossly and wrongfully neglected to perform the same, that afterwards, to wit, on the 7th day of May, 1862, by and through their gross negligence and carelessness in not removing a certain large broken limb or branch then hanging upon and from a certain tree situated within the public square of said city known as the Green, the said limb fell with great force and violence upon the plaintiff, by means whereof the plaintiff, who was an invalid and cripple, was terribly bruised and wounded, and rendered senseless, and suffered a fracture of the bones of the shoulder, and has ever since, in consequence of the injuries then received, been confined to her bed, and by means thereof has suffered great pains of body and mind, and has been prevented from attending to her ordinary business, and has expended large sums of money in endeavoring to cure the wounds aforesaid, and has ever since been prevented from attending to her ordinary business.

The declaration contained four other counts for the same injury, the third of which was substantially like the first, the second and fifth alleged the duty of the defendants to have arisen under the statute concerning highways, and the fourth alleged the duty to have grown out of the possession of the public square and of the tree in question by the city.

The defendants demurred to the declaration, and the questions arising on the demurrer were reserved for the advice of this court.

*C. R. Ingersoll* and *Watrous*, in support of the demurrer.

1. The claim that a defective limb of a tree overhanging a

highway is a defect in the road, within the intent of the statute relating to highways, is a novel one. The liability of public corporations for defective roads is wholly a creature of the statute, and the statute imposing it is not to be loosely construed. *Chidsey* v. *Canton*, 17 Conn., 475 ; *Borough of Stonington* v. *States*, 31 id., 213 ; *Brady* v. *City of Lowell*, 3 Cush., 121 ; *Bigelow* v. *Randolph*, 14 Gray, 541 ; *Eastman* v. *Meredith*, 36 N. Hamp., 284. In this state certainly it has never yet been held that this liability extended to any other defects than those pertaining to the road bed. It is strongly confirmatory of this construction of our statute that the legislature thought it necessary to pass a distinct statute in the year 1801, requiring a " railing on the sides of such parts of the highway as are so made above the adjoining ground as to endanger the safety of travelers," and giving damages to any person injured by reason of any defect in such railing. Gen. Statutes, p. 493, sec. 8. The statute of Massachusetts with regard to highways is not so narrow as ours, and for a while the tendency of their decisions was to enlarge the liability of towns and cities in this respect, and in *Drake* v. *City of Lowell*, 13 Met., 292, it was held that the city was liable for injuries to a traveler caused by the fall of a defective awning post which had been constructed over the sidewalk. But in *Keith* v. *Easton*, 2 Allen, 552, and *Hixon* v. *City of Lowell*, 13 Gray, 59, their Supreme Court manifests a decided inclination to recede from that position, and in the last mentioned case they hold that snow overhanging the highway from the eaves of a house is not such a defect that the corporation is obliged to remove it, and can be held liable for injuries resulting from its fall upon a traveler. A defective limb of a tree is of the same class of dangers as the overhanging snow. They are among the ordinary risks which a traveler runs. But this determination of the court in Massachusetts to restrict the liability of municipal corporations under the highway acts to defects in the roadway is even more unequivocally manifested by their recent decision in *Barber* v. *City of Roxbury*, 11 Allen, 318. But the city of New Haven at the time of this injury was not bound to repair the street in

question. *Borough of Stonington* v. *States*, 31 Conn., 213. Before the amendment to the city charter making the city a highway district, which went into effect July 4, 1862, (*City Charter and By-Laws*, p. 42,) the town of New Haven was charged with the repair of all highways within the city. Neither the general statutes nor the city charter imposed any such obligation on the city.

2. The neglect of the city to remove the limb after having undertaken to put the trees in proper condition, as alleged in the first and third counts of the declaration, does not give to the plaintiff a right of action for the injury received by her. The plaintiff's grievance is that the city has neglected its duty in not removing a limb which by reason of its condition was dangerous to persons lawfully using the public square. Now if any such duty rests upon the city it is clearly a corporate duty, for the neglect of which no private action lies, unless given by statute. It is precisely the same kind of duty as that requiring the repair of defective highways by the town or city. See authorities before cited. But no such duty is imposed upon the city. The provision of the charter giving the common council " power to make such by-laws as they may see fit to make in relation to the cutting, breaking or injuring of the trees, and the protection and preservation of trees in the streets, highways and public squares in said city," (*City Charter*, sec. 24,) clearly has in view the thrift of the trees, not the safety of the public. The by-laws of the city passed under this power have the same object. *City By-Laws*, p. 124. Nor is the plaintiff aided by the fact which is alleged in the declaration, that the city had assumed the task of keeping the trees in proper condition. The work, whether imposed by the charter or assumed by the city, and whether for the purpose of protecting the public or preserving the trees, was a corporate work, peculiarly and exclusively so. It was for the benefit of the entire public. It contained no element of a private character. The case therefore can not be brought within that class of cases in which municipal corporations have been held liable for their negligence in exercising certain special powers for purposes not wholly of a

public or corporate character—as in the construction of water-works and sewers, in which individuals, who may be either assessed for their construction, or may be required to pay for using them, have a private interest. As to these special powers the responsibilities of the corporation for negligence have been held to be similar to those of a private individual, as in *Bailey* v. *City of New York*, 3 Hill, 531. Angell & Ames on Corp., §§ 33, 35. But in such cases the corporation is only liable in a private action for its negligence in exercising the special power. It can not be held liable for not doing the work. Whether it will do the work, or how much it will do, or how much it will leave undone, is committed to its discretion, which courts will not control. A contrary intimation may be found in *City of New York* v. *Furze*, 3 Hill, 612, but the dictum is repudiated in *Wilson* v. *City of New York*, 1 Denio, 595, and the law in New York has been recently settled as above stated in *Mills* v. *City of Brooklyn*, 32 N. York, 489, where all the authorities are reviewed. In some cases a municipal corporation has been held liable to an individual for non-performance of some special work, where the corporation, in consideration of some special privilege granted to it, had agreed to perform the work, as to keep up a ferry in consideration of the tolls. But no agreement of that character can be implied here. The city of New Haven has no more agreed to regulate the trimming of the trees which line their streets and squares than to do any other of the manifold acts of good government which by the same section of their charter they are empowered to do, as to extinguish fires, or inspect produce, or license hackmen, &c. But "that a corporation established as a part of the government is liable for losses by an omission to observe a law of its own, in which no penalty is provided, is a principle for which there is no precedent." Marshall, C. J., in *Fowle* v. *Common Council of Alexandria*, 3 Peters, 409, in which case the city of Alexandria was sought to be held liable for negligence in not taking a bond from an auctioneer whom it had licensed, as required to do by its charter, the plaintiff having sustained a loss by the act of the auctioneer.

3. The plaintiff alleges in the fourth count that the duty to keep the tree in proper condition resulted from the possession which the city had of it as a tree " standing on a square, park or common in the city." It is not alleged, nor can it be claimed, that the city was the proprietor of the square with the trees there growing, nor even that the city was the owner in fee of the land subject to an easement in the public to use the land as a common. The city could have had no other possession of this tree than it had of all other trees in the streets or commons in the city—a possession as guardian of the public interests, enabling it to protect the tree from injury, just as under a similar power of its charter it aims to protect the gardens of its citizens from trespasses. *City Charter*, p. 13 ; *By-Laws*, p. 91. But whatever may be the character of this possession, even if that of an owner of the square, it was a possession for public purposes simply, and the duties resulting from it were corporate duties solely. Its liabilities in this respect have already been sufficiently considered.

*S. E. Baldwin,* contra.

1. It appears from the first and third counts that the city by their charter were empowered to make by-laws and " all needful regulations " in regard to the care and trimming of trees upon the public squares, and that they proceeded to act under this power. Such action on their part was a public duty and they were required to take it. *City of New York* v. *Furze*, 3 Hill, 614 ; *Mason* v. *Fearson*, 9 How., 259. And having taken this action, and assumed upon themselves the task of trimming all trees upon the public squares and keeping them in proper condition and entered on the work, they became liable to any party injured by their misfeasance or non-feasance in this behalf. *Bailey* v. *City of New York*, 3 Hill, 531 ; *City of New York* v. *Furze*, id., 616 ; *Conrad* v. *Village of Ithaca*, 16 N. York, 158 ; *Weet* v. *Village of Brockport*, id., 161; *Bigelow* v. *Randolph*, 14 Gray, 543 ; *Child* v. *City of Boston*, 4 Allen, 54; *City of Chicago* v. *Robbins*, 2 Black., 418; *Goshen & Sharon Turnpike Co.* v.

*Sears,* 7 Conn., 86 ; *Scott* v. *City of Manchester,* 37 Eng. L. & Eq., 495. Had the city employed some careless person to trim off this dead limb, and if by his negligence in cutting it the limb had fallen upon a passer-by, they would surely have been liable ; much more then if they neglected to perform the duty of cutting it off altogether, so that " through their gross negligence and carelessness in not removing it " the limb fell and injured the plaintiff.

2. Independent of any charter power or duty in this respect the city is liable in the view of the case presented by the fourth count, as being the possessor of the tree. As an occupant of land and property owner the city is to be treated like any individual in the same situation. *Bailey* v. *City of New York,* 3 Hill, 540, 541. But a private individual is liable for injuries received from any dangerous object or erection which he suffers to remain on premises under his control, in such a situation as to endanger the safety of others. *Regina* v. *Watson,* 2 Ld. Raym., 856 ; *Birge* v. *Gardiner,* 19 Conn., 507 ; *Church of the Ascension* v. *Buckhart,* 3 Hill, 193 ; Co. Litt., 56 *b.* Public squares are *quasi* public ways, and their obstruction or annoyance is equally actionable. 2 Bish. Crim. Law, § 1049.

3. The city admit under the second and fifth counts that the tree in question stood on the Green within the limits of Temple street, the dead limb overhanging and obstructing travel on the street, that it was the duty of the city to repair Temple street, and that they had been immemorially used so to repair. Though by common law the whole parish was bound to repair roads, yet prescription proved would always throw the burden on a city or other district within it. 1 Hawk. P. C., book 1, ch. 76, § 8 ; Burn's Justice, " *Highways,*" 709, 710 ; *Lynn* v. *Turner,* Cowp., 86; Angell on Highways, § 255. And aside from prescription, if a city lay out a street, they, not the town, are liable to repair it. *Townsend* v. *Hoyle,* 20 Conn., 7 ; *Guthrie* v. *Town of New Haven,* 31 id., 309, 321, 326. A ruinous house overhanging the highway, or any obstruction overhead, whether actually touching or threatening to touch passers-by, is an obstruction

9

to the highway, and establishes a failure to repair the highway, especially when connected with evidence of negligence on the part of those bound to repair. 1 Hawk. P. C., ch. 76, §§ 48, 50, 52; Burn's Justice, " *Highways*," 728 ; 1 Russell on Crimes, 347 ; 2 Bish. Cr. Law, §§ 1053, 1055 ; Angell on Highways, §§ 225, 248, 250, 263 ; *Drake* v. *Lowell*, 13 Met., 292; *Day* v. *Milford*, 5 Allen, 98; *Dickey* v. *Maine Telegraph Co.*, 8 Am. Law Reg., 358 ; *House* v. *Metcalf*, 27 Conn., 632 ; *Dimmock* v. *Suffield*, 30 id., 129. That the city was guilty of negligence in not repairing the highway by cutting off the dead limb, is a legal inference from the fact that the limb fell. *Beecher* v. *The Derby Bridge & Ferry Co.*, 24 Conn., 491, 499. And it is further expressly admitted by the demurrer. Under the general highway statute, therefore, the city being the corporation which ought to keep Temple street in repair, and having failed to do so in this instance, must answer in damages to the person injured. Gen. Stat., p. 493, § 6.

4. If the city have failed in duty in any one of the particulars embraced in the different counts, and they admit that they have been grossly negligent in each and all, the plaintiff, who has been injured by that negligence, can not be without remedy. The case may be new, but the principle that for every wrong the law gives a remedy is wide enough to embrace it. 3 Black. Comm., 23.

CARPENTER, J. The plaintiff, on the 7th day of May, 1862, being within the limits of Temple street, on a public square in the city of New Haven, was injured by the falling of a limb from an overhanging tree. She now seeks to recover the damages thus sustained of the city of New Haven.

The declaration alleges that it was the duty of the city to keep said tree in proper condition, and that it omitted its duty in this respect, in consequence of which the plaintiff was injured. This duty the plaintiff claims arises from one or all of three distinct and independent sources.

1. The undertaking of the city to regulate and keep in good order said tree under its charter.

2. The general statute relating to highways.

3. The possession of said tree by the city.

The declaration contains five counts. The duty of the defendant, the breach of which is complained of, is alleged in the first and third counts as arising from the city charter; in the second and fifth, from the statute concerning highways; and in the fourth, from the possession of the tree by the city. To this declaration there is a demurrer.

A majority of the court are of the opinion that the first and third counts show a good cause of action, and consequently that the demurrer must be overruled.

The questions involved in the other counts, namely, whether the defendant is liable under our highway statutes, and whether it is liable by reason of its possession of the tree, are questions of importance, neither of which has ever been decided in this state to my knowledge. The very fact that neither of these questions has ever before come before this court for decision, may be a strong argument against the validity of the plaintiff's claim, as showing the general sense of the profession that such actions can not be maintained. But as our deliberations have had reference principally to the first and third counts, and as a decision in the plaintiff's favor upon the point involved in them will doubtless dispose of the case, we have deemed it unnecessary to consider the other questions, and have purposely avoided expressing any opinion with reference to them.

1. Was it the duty of the city to regulate and keep in good order these trees?

The court of common council were authorized by the city charter to make such by-laws as they should see fit, relative to " the cutting, breaking or injuring of trees, and the protection and preservation of trees, in the streets, highways and public squares in said city." This charter was accepted by the city, and pursuant to it the court of common council passed a by-law, to which our attention was called in the argument, punishing with a fine of thirty-four dollars any one who should, " without the approbation in writing of the mayor and a majority of the aldermen first obtained, cut, bruise, destroy or injure, or aid in cutting, bruising, destroying or injuring,

any tree, which is or shall be set out, planted or standing for shade, ornament or use in either of the public squares, or in either of the public streets or highways of said city." Pruning and the removal of dead and decaying branches are essential at times to a proper " protection and preservation " of shade and ornamental trees. The city authorities not only had power to do this, but that power vested in them *exclusively*. Their duty to do it would seem to follow as a necessary consequence.

The by-law, which seems to have been carefully drawn, contemplates that certain persons should from time to time be approbated to do some of the things, at least, therein prohibited. Can any one doubt that it was the intention of the framers of that by-law to reserve to the city authorities the exclusive power of determining when and by whom such trees should be trimmed, or if need be entirely removed ? Indeed the duty of the city in the premises does not seem to be seriously denied ; and we deem it unnecessary to pursue this branch of the case further.

2. The breach of this duty and the injury to the plaintiff resulting therefrom are admitted by the pleadings. It only remains for us to consider whether the defendant is liable for such breach.

Before referring to the authorities bearing upon the case, let us glance briefly at the origin and nature of the duty in question. It was not a duty imposed upon the city by a mere act of legislation without its assent, like the duty of towns to maintain highways, but it had its origin in a contract, voluntarily entered into between the city on the one hand and the sovereign power on the other. Franchises of this character are not granted unsought ; but whenever the population in any given locality becomes sufficiently numerous to justify it, application is made for a city charter, which is usually granted in such terms and contains such provisions as may be required by those interested therein and who are to be affected thereby. There is nothing in this case to show that it is an exception to the general rule. It may be inferred, therefore, that the city asked for power to regulate

and take care of these trees. That power having been granted the city assumed upon itself to exercise it. By doing so it entered into a contract with the sovereign power, and with every individual interested in the performance of this duty, that it should be performed in a reasonable and safe manner.

This contract was entered into upon a good and sufficient consideration. A sufficient number of shade and ornamental trees, suitably arranged and properly cared for, in the streets and public squares of any city or town, adds greatly to the beauty and attractiveness of the place, makes it more desirable as a place of residence or business, and adds materially to the value of real estate.

This matter might perhaps be properly attended to by the adjoining proprietors, so far as the streets are concerned, but if left to them alone the danger is that it would be imperfectly or at least unsatisfactorily done in many cases, and that the public squares would be entirely neglected. Add to this the importance of having the trees properly protected from injury by suitable penalties, and we can readily see that it is not only desirable but advantageous for the city to have entire control of the matter. But independently of any benefit resulting to the inhabitants of the city, the granting of an act of incorporation, or of special powers and privileges to a corporation already existing, is of itself in law a benefit, and has always been considered a sufficient consideration to support any undertaking entered into by the corporation to perform any duty thereby imposed upon it.

This duty is not, strictly speaking, a public one. It is not a matter in which the public at large, outside of the immediate vicinity of New Haven, have any particular interest. It is not a power or duty imposed upon the city by general law ; nor is it applicable alike to all cities ; but it is a special power or privilege conferred upon the city at its request. In the argument it was likened to the duty of a town in respect to highways. But the distinction between the two cases seems to me to be very marked. The duty of opening and maintaining highways is a governmental one. It is true government discharges this duty for convenience's sake, through

the medium of the several towns and cities; but the manner of discharging the duty does not change its nature.   Government then is interested in the performance by the town of its duty in this respect, while government, as such, has no interest whatever in the manner in which these shade trees are cared for.   The entire public have a direct interest in the streets and highways of the city of New Haven, and will insist upon their being kept open and fit for public use, whether the city is willing or otherwise; but the city may, if it thinks proper, remove or destroy every shade tree in the highways and public squares within its limits, and the outside public, however much they may regret it, will have no right to interfere.   The duty in question seems to me to resemble very closely the duty of a town or city that has contracted to supply its inhabitants with water or gas, or to promote their comfort and health by a system of drainage and sewerage. In cases of this character, if the corporation undertakes the duty, and performs it in so careless or negligent a manner as to injure others, or if it negligently permits the works to be out of repair, whereby damage is done to individuals, the corporation is unquestionably liable.   In this case the city has undertaken the duty of keeping these trees in proper con dition.   It negligently permitted one of them to be in an unsafe condition, whereby the plaintiff was injured.   I am unable to see upon what principle the defendant can be exempted from liability.

The authorities bearing upon this question are very numerous.   An examination of any considerable number of them in detail is unnecessary.   I think they will fully establish the following propositions.

1. Whenever a public duty is imposed upon a town, or other *quasi* corporation, without its consent, express or implied, such town or corporation is not liable to an action for negligence in respect to such duty, unless a right of action is given by statute.   *Chidsey* v. *Canton*, 17 Conn., 475; *Eastman* v. *Meredith*, 36 N. Hamp., 284, and cases there cited; *Baxter* v. *Winooski Turnpike Co.*, 22 Verm., 123; *Hyde* v. *Jamaica*, 27 id., 443; *Mower* v. *Leicester*, 9 Mass., 247;

*Brady* v. *City of Lowell*, 3 Cush., 121 ; *Bigelow* v. *Randolph*, 14 Gray, 541 ; *Weet* v. *The Trustees of the Village of Brockport*, 16 N. York, 161.

2. Whenever duties of a judicial nature are imposed upon any such corporation, the due execution of which requires the exercise of deliberation, judgment and discretion, the corporation is exempt from all responsibility by action for the motives which influence it, and for the manner in which such duties are performed. But where judicial duty ends and ministerial duty begins, there immunity ceases and liability attaches. *Rochester White Lead Co.* v. *City of Rochester*, 3 Comst., 463 ; *Mills* v. *City of Brooklyn*, 32 id., 489.

3. But when a corporation is charged with the performance of some · public duty, as a condition, express or implied, upon which it holds its corporate powers ; when a grant is made to a corporation of some special power or privilege at its request, out of which public duties grow ; and when some special duty is imposed upon a corporation not belonging to it under the general law with its consent ; in these and like cases, if the corporation is guilty of negligence in the discharge of such duty, thereby causing injury to another, it is liable to an action in favor of the party injured. *The Mayor of Lynn* v. *Turner*, Cowper, · 86 ; *Henly* v. *The Mayor of Lyme*, 5 Bingham, 91 ; *Eastman* v. *Meredith*, 36 N. Hamp., 284 ; *Riddle* v. *Proprietors of Locks and Canals*, 7 Mass., 187 ; *Bigelow* v. *Randolph*, 14 Gray, 543 ; *Conrad* v. *Village of Ithaca*, 16 N. York, 158 ; *Weet* v. *Trustees of the Village of Brockport*, 16 N. York, 161.

The ground of liability in this class of cases seems to be, that the defendant corporation has for a consideration voluntarily contracted to discharge the duty in question. In respect to such duties a town or city is not a mere municipal corporation, but is a private one, and liable as an individual would be under the same circumstances. This will be apparent from a more particular examination of some of the cases above referred to.

In *Henly* v. *Mayor of Lyme* it appears that the corporation of Lyme was the grantee of a borough, and of a pier or

quay with tolls, and required by its charter to keep in repair certain sea banks and walls for the protection of the lands in the borough, and the houses thereon standing. These were suffered to be out of repair, in consequence of which the plaintiff's property was injured. The defendants were held liable. Best, C. J., says:—"Now I take it to be perfectly clear that if a public officer abuses his office, either by an act of omission or commission, and the consequence of that act, is an injury to an individual, an action may be maintained against such public officer. * * * Then what constitutes a public officer? In my opinion every one who is appointed to discharge a public duty and receives a compensation in whatever shape, whether from the crown or otherwise, is constituted a public officer." And again, after referring to several cases, he adds:— "It seems to me that all these cases establish the principle that if a man takes a reward,—whatever be the nature of that reward, whether it be in money from the crown, whether it be in land from the crown, whether it be in lands or money from any individual,—for the discharge of a public duty, that instant he becomes a public officer; and if by any act of negligence or any act of abuse in his office, any individual sustains an injury, that individual is entitled to redress in a civil action."

It does not appear in that case that stress was laid upon the circumstance that the defendants were entitled to tolls, the reception of tolls not being the entire consideration relied on.

In *Eastman* v. *Meredith* the facts were as follows:—The town of Meredith built a town house to be used for holding town meetings and other public purposes. The house was so improperly constructed that the flooring gave way at a town meeting, and the plaintiff, an inhabitant of the town, and a legal voter, was injured. The court held that the town was not liable. Perley, C. J., in giving the opinion of the court says: "Here is no contract, express or implied, between the state and the individual town, and no grant of any special power or privilege, which can be supposed to have been voluntarily accepted by the town upon condition of performing

the public duty." Again, " The cases cited that come near-
est the present are perhaps those in which it has been held
that a town or city is liable for a private damage, caused by
neglect to perform a public duty, growing out of the grant of
some special power. But those cases can not be regarded as
authorities in point, because they appear to have been de-
cided upon a distinction between the exercise of such special
powers, and the exercise of the general powers which belong
to all towns as mere public and political divisions of the coun-
try, and upon the ground that the special powers thus granted
to the individual town or city were in the nature of privileges
accepted upon the implied condition of performing the public
duties growing out of them."

. In *Riddle* v. *Proprietors of Locks and Canals*, Parsons, C.
J., says :—" It is one of these maxims," (of the common law,)
" that a man specially injured by the breach of duty in an-
other shall have his remedy by action. If the breach of duty
be by an individual, there is no question ; and why should a
corporation, receiving its corporate powers and obliged by its
corporate duties *with its own consent*, be an exception, when
it has, or must be supposed to have, *an equivalent for its
consent.*"

In *Bigelow* v. *Randolph* the court say:—" It was said by
Chief Justice Parsons, half a century since, in *Riddle* v. *Pro-
prietors of Locks and Canals*, 7 Mass., 187, and adjudged by
the full court in *Mower* v. *Leicester*, 9 Mass., 247, that a pri-
vate action cannot be maintained against a town or other
*quasi* corporation for a neglect of corporate duty, unless such
action be given by statute. And so it has ever since been held
by this and other courts. This rule of law however is of
limited application. It is applied in the case of towns only to
the neglect or omission of a town to perform those duties
which are imposed *on all towns without their corporate assent*,
and exclusively for public purposes ; and not to the neglect
of those obligations which a town incurs when a special duty
is imposed on it *with its consent*, express or implied, as a
special authority is conferred on it at its request. In the
latter cases a town is subject to the same liabilities for the

Jones *v.* City of New Haven.

neglect of those special duties to which private corporations would be if the same duties were imposed or the same authority were conferred on them, including their liability for the wrongful neglect as well as the wrongful acts of their officers and agents."

In *Conrad* v. *The Trustees of the Village of Ithaca*, 16 N. York, 158, the reporter's summary, so far as applicable to the principle now under consideration, is as follows:—" Where the trustees of a village are made by its charter commissioners of highways, they are to be regarded in respect to that function not as independent public officers, but as the agents of the corporation, so as to make the latter civilly responsible for their acts or omissions according to the law of master and servant. It seems that the principle upon which municipal corporations are thus liable is, that whenever an individual or corporation, for a consideration received from the sovereign power, has become bound by agreement, either express or implied, to do certain things, such individual or corporation is liable in case of neglect to perform the agreement, not only to a public prosecution by indictment, but to a private action at the suit of every person injured by such neglect. The grant by the government to a municipality of a portion of its sovereign power is to be deemed a sufficient consideration for an implied contract on the part of the corporation to perform the duties which the .charter imposes, and the contract made with the sovereign power enures to the benefit of every individual interested in its performance." There are many other authorities which take the same view of the law, but I deem it unnecessary to refer to them. And I may add that I have been unable to find any case similar in its facts to this, in which a contrary doctrine has been held.

It seems to us very clear that the defendant is liable on the first and third counts, and that the demurrer should be overruled.

In this opinion the other judges concurred; except PARK, J., who dissented.

PARK, J.   I can not concur in the opinion expressed by the majority of the court, for the following reasons.

The charter of the city of New Haven provides that the court of common council shall have power to pass by-laws respecting the cutting, breaking, and injuring of trees, and the protection and preservation of trees in the streets, highways and public squares of the city.   In order to carry into effect this provision of the charter, the court of common council passed the following by-law:—" That each and every person who shall, without the approbation in writing of the mayor and a majority of the aldermen first obtained, cut, bruise, destroy or injure; or aid in cutting, bruising, destroying, or injuring any tree which is or shall be set out, planted or standing for shade, ornament or use, in either of the public squares, or in either of the public streets or highways of said city, shall pay a fine," &c.

The majority of the court hold that the plaintiff has set forth a good cause of action in the first and third counts of the declaration, which are based upon the provisions of the charter referred to and the by-law quoted.   They hold that the charter, taken in connection with the by-law, imposes a duty upon the city sufficiently extensive in its consequences to make them liable for the injuries the plaintiff received, resulting from an omission to perform it.

With all deference to the opinion of the majority of the court, I submit that the charter and by-law, considered jointly or separately, were never intended to have, and do not have, the effect claimed for them.

It must be conceded that the charter has sole reference to the protection and preservation of the trees described therein. The legislature considered that the trees were in danger from the attacks of mischievous trespassers and needed protection, and therefore authorized the city government to afford them protection.   These trees were the pride and ornament of the city, as every one knows, and had been maturing for several generations, and it was important that they should be protected.   Trees that are the property of citizens generally and standing in public places are constantly exposed to wanton

injuries.   To shield them from harm was the object of this provision, and it must be admitted that nothing further was in the minds of the legislature in granting it.   Trees line not only the public streets and avenues of cities, but also the country highways, and no statute can be found, either public or private, imposing upon any city, town or borough the duty of pruning them to the extent that public safety may require.   It would be strange indeed if the legislature was unwilling that the city of New Haven should have the right to protect these trees from the ravages of the destroyer, without their assuming grave responsibilities to the public at large disconnected entirely from the object in view.

It is unnecessary to pursue this subject further, for the majority of the court seem to admit that the sole object the legislature and the city of New Haven had in view, was the protection and preservation of the trees.

Now what duty did the city assume in order to carry into effect this provision of their charter ?

It is reasonable to suppose that they assumed to do what the exigencies of the case required to accomplish the object in view, and no more.   The object in view required the passage of a by-law forbidding all persons from cutting, breaking or injuring the trees.   They could not be protected in any other mode.   But the by-law rendered it necessary that parties interested in the trees should surrender their right to care for them by pruning the trees from time to time in order to promote their health and beauty, and just so far it is reasonable to suppose that the city assumed a corresponding duty in relation to the trees, and may be said to have entered into a contract with the legislature on the one hand and those parties on the other, that in consideration of the privilege conferred by their charter, and the right to care for the trees surrendered by those parties, they would thereafter take the place of those parties in relation to the trees, and would care for them as they had previously been cared for, by pruning them to the extent necessary for their beauty and welfare.   Was it necessary to go further than this to accom-

plish the object in view—the protection and preservation of the trees ?

It seems admitted by the majority of the court that this was the duty that the defendants were required to discharge. They say, " Pruning and the removal of dead and decaying branches are essential at times to a proper protection and preservation of shade and ornamental trees. The city authorities not only had power to do this, but that power vested in them exclusively. Their duty to do it would seem to follow as a necessary consequence." * * " Indeed the duty of the city in the premises does not seem to be seriously denied, and we deem it unnecessary to pursue this branch of the case further."

I agree with the majority of the court, that the defendants assumed the performance of this duty, but the question that divides us is in regard to the consequences that result from the omission of the defendants to discharge it.

To whom was this duty owed ?

The majority of the court say,. " This duty is not strictly speaking a public one. It is not a matter in which the public at large, outside of the immediate vicinity of New Haven, have any particular interest." * * " The city may, if it thinks proper, remove or destroy every shade tree in the highways or public squares within its limits, and the outside public, however much they may regret it, will have no right to complain."

If the public at large would have no right to complain of the destruction of these trees, I am unable to discover how this plaintiff, who was simply a member of the public, can complain of the omission of the defendants to prune the trees to the extent their beauty and welfare required, in order that they might be preserved.

I am not now considering whether the city would be liable if, in pruning the trees, they had performed the work so carelessly that a third person became injured in consequence. They would undoubtedly be liable in such a case, for every one is bound to exercise reasonable care not to injure another in performing whatsoever he does, no matter whether he is a

volunteer in the business or is required by some duty to perform it.

It will not do to confound this principle with one that governs a case where the cause of action is based upon mere omission to act at all. There a duty must exist requiring action in order to lay the foundation for recovery, and the duty must be owed to the party making complaint. Here it is said by the majority of the court that the public at large have no interest in these trees. The duty then cannot be owed to the public at large, for it has reference to the well-being of the trees, and how can the plaintiff complain of an omission to perform it, when confessedly she has no interest in the trees.

The argument of the majority of the court is substantially this. The charter gave authority to the city government to pass by-laws for the protection and preservation of the trees. The city accepted the charter and entered upon the duty of protecting the trees by passing the by-law forbidding all persons to injure them. The welfare of the trees required that they should be pruned from time to time. This duty the city took upon itself by virtue of the charter and by-law. They omitted to perform their duty to parties interested in the trees, because the limb that injured the plaintiff should have been removed. The well-being of the tree required it. Had they performed their duty the limb would never have fallen upon the plaintiff, and consequently the injury to the plaintiff resulted from the omission of the defendants to perform their duty.

The difficulty with the argument is, that the omission of the defendants to perform their duty in one respect resulted in an injury to the plaintiff in another and different respect; or in other words, the injury to the plaintiff did not occur in the line of duty assumed by the defendants. If the plaintiff was interested in the tree, and the tree became injured in consequence of the culpable omission of the defendants to remove the limb, and the plaintiff was complaining of the injury to the tree, then her complaint would be legitimate. But how can the plaintiff complain of an injury that she received in

her *person*, that resulted from an omission of the defendants to perform their duty to parties interested in the trees?

Suppose there is a limb overhanging the highway in the city of New Haven, that all persons skilled in the art of pruning trees to promote their health and beauty will unite in saying should be removed, as detrimental to the health and beauty of the tree. The attention of the city authorities is called to the fact, and they admit that it ought to be removed for the same reason. There is no appearance of decay about the limb that the closest scrutiny can discover, but in fact it is rotten within. The city authorities neglect to remove the limb, and it falls and injures a traveler upon the highway. Would the city be liable?

There was culpable omission of duty to parties interested in the tree. If the city had performed its duty the traveler would never have been injured. The case has all the essential elements of the one under consideration, and I am unable to discover how the city could escape liability upon the principle established by the majority of the court. If the omission of the city to perform its duty to parties interested in the trees will make it liable for all injuries resulting therefrom, then no matter whether there was any appearance of decay about the limb that could be discovered or not.

Suppose there was a limb overhanging a public street in the city of New Haven that the beauty and welfare of the tree required should not be removed; but the limb drooped nearly to the street and obstructed the highway. Whose duty was it to remove the limb, and pay the damages had injury resulted therefrom?

The case does not come within the line of duty assumed by the defendants, for the facts of the case expressly exclude it. And further, at the time of the occurrence here in question, the duty of keeping the streets in a proper state of repair devolved upon the town. It was the duty of the town therefore to remove the limb. Was it the duty of the city also? The case can not be found where the law has imposed upon two municipal corporations the performance of the same duty at the same time. It is against the policy of the law to divide

responsibility in such . a case, and create a state of things where each would wait for the other to perform its duty and neither discharge it.

Suppose a tree standing upon one of the public streets in the city of New Haven is dead, and public travel is endangered thereby. Is it the duty of the city to remove the tree? The case does not come within the charter, for that is limited to trees that may be preserved, and protected from injury. It does not come within the by-law, for that is limited in express terms to trees that are for shade, ornament or use. Neither does it come within the line of duty assumed by the defendants, for that is limited to trees that may be pruned to promote their health and beauty. This tree is dead.

The duty of the city to remove it can no where be found; and if the city would not be liable should injury result from the falling of the tree, can it be said that it would have been liable if the tree had been partly alive, and a limb from the tree had fallen upon the plaintiff, thus making the liability of the city turn upon the question whether a part of the tree was alive or not?

Much reliance seems to be placed upon the fact that the by-law forbids all persons cutting or injuring the trees.

In the first place, it is easy to see that the trees could not have been protected in any other mode. In the second place, there might be a presumption that the limb would have been removed if any person or class of persons were required to do it; but such presumption could hardly arise in relation to mere volunteers. It would seem, therefore, that the claim is based upon the assumption that some person or corporation was bound to remove the limb, and the by-law prevented its being done. Who was bound to do it? Was the town of New Haven? The opinion of the majority of the court strongly intimates the negative. If the town was not burdened with this duty we look in vain for the person or persons, natural or artificial, on whom this duty rested.

But suppose the town of New Haven or some other corporate body was bound to perform this duty. Did the by-law prevent them?

The by-law is aimed at medlers—at trespassers. They are forbidden to cut, bruise, destroy or injure the trees. These words imply doing harm to the trees, and have no reference to the abatement of a nuisance that every one has a right to abate whether charged with the duty or not. It would be remarkable indeed if the legislature intended to confer authority upon the city government to forbid the abatement of a nuisance—to forbid the enjoyment of a right as old as the common law, and existing everywhere both in this country and in England.

I submit that the charter confers no such authority, neither does the by-law attempt to exercise it, but that all persons had full liberty to remove this limb and abate this nuisance.

It seems to me that these considerations fully show that the defendants are not liable for the injury to the plaintiff growing out of an omission to prune the trees to the extent their health and beauty required. That duty was owed to parties interested in the trees, and to them only. This plaintiff was not so interested. An omission to perform that duty would result only in injury to the trees. This plaintiff seeks to recover for an injury to her person.

I am unable to discover how the defendants can be liable for the injury the plaintiff received unless the defendants were bound by their charter and by-law to prune the trees to the extent necessary for public safety. But that duty is not stated in the declaration and therefore the plaintiff can not recover for an omission to perform it. It was not necessary to go so far to accomplish the object in view—the protection and preservation of the trees. Neither is it relied upon by the majority of the court. They cite many authorities in support of the view they have taken of the case, which would never have been done had they supposed this duty existed, for in that case the liability of the defendants would have been too clear for controversy had it been duly alleged. This duty and the one we have considered differ entirely in their nature and character. The one has reference solely to the trees. The other has regard only to public safety. The one is owed entirely to parties interested in the trees. The other is due solely to the public at large.

An injury resulting from the non-performance of the one would be confined to the trees themselves. An injury resulting in like manner from the other would be limited to the destruction of life or limb, or property distinct from the trees. The performance of these duties would require different skill, different motives, different objects in view, different examination of the trees.

In the one case an eye would be kept single to the beauty and prosperity of the trees, and no attention would be paid to the place where they were standing, whether upon the public highway or in the middle of a man's farm. In the other case no regard would be paid to the beauty or health of the trees, but the attention would be directed solely to the place they occupied.

In concluding this part of the case, permit me to say that it is extraordinary indeed, if it be true, that while these duties differ so essentially from each other, all the responsibilities attaching to both of them should be embraced by one of them ; thus making the defendants liable to the same extent as they would have been if both of these duties had been assumed by them.

In relation to the authorities cited by the majority of the court, it is easy to see that they are as much in harmony with the view I have taken of the case, as they are with that taken by the majority, for none of them it seems to me apply to the question we are considering.

In the case of *Henly* v. *The Mayor of Lyme*, 5 Bingham, 91, the crown conveyed to the defendants a borough and pier with tolls, on condition that they should keep in repair certain sea banks and walls for the protection of certain lands adjoining the sea and the houses thereon standing. The plaintiff was the owner of a portion of the lands, and his house was damaged by the sea in consequence of the walls being out of repair. The question was, whether the plaintiff could sustain an action, inasmuch as he was not a party to the grant. The court held that it was sufficient that the grant was made for his benefit. This case shows merely that whenever an individual or corporation, for a consideration re-

ceived from the sovereign power, becomes bound by covenant or agreement with such power to perform certain acts for the benefit of third persons, such individual or corporation is liable in case of neglect to perform such covenant, which results in an injury to the persons for whose benefit the covenant was made.

It will be perceived in this case that the injury to the plaintiff resulted in the line of duty assumed by the defendants.

Suppose a person having no interest in the houses and lands had become injured in his person in consequence of the omission of the defendants to keep the sea walls in proper repair. If such had been the case, and the court had held that the plaintiff might recover, then I admit the authority would have been in favor of the plaintiff in the case under consideration.

In the case of *Eastman* v. *Meredith*, 36 N. Hamp., 284, the majority of the court have stated the facts of the case and the reasoning of the court showing that the defendants were not liable. The case was cited I suppose to establish the doctrine of *Henly* v. *The Mayor of Lyme*. The court recognize the doctrine of that case, but hold that the principle does not apply to the one then under consideration.

The case of *Bigelow* v. *Inhabitants of Randolph*, 14 Gray, 541, is a case similar in principle to the case of *Eastman* v. *Meredith*, and decided upon the same principle. The town of Randolph had assumed the duties of the school districts of the town, and had purchased a lot of land and erected a school house thereon for the use of the public schools of the town. While the school house was thus in use, an excavation was made in the lot under the authority of the selectmen of the town, by digging into a bank to obtain gravel for repairing the highways of the town. While the bank remained in a dangerous condition, a child attending the school being at play with some of her companions near the edge of the bank, the bank caved in and she was precipitated to the bottom of the excavation and injured. It was admitted that the defendants were guilty of negligence in leaving the bank in the condition it was in at the time of the injury, but the place was not

within the limits of any public highway. The question was whether the plaintiff could recover, she having exercised reasonable care at the time of the injury. The court held that she could not recover.

In the case of *Conrad* v. *The Trustees of the Village of Ithaca*, 16 N. York, 158, the trustees of the village were made by its charter commissioners of highways for the territory within the limits of the village. They constructed a bridge within the village in so negligent a manner that by reason thereof the plaintiff's building was carried away by a freshet. The question was, whether the village was responsible for the acts of the commissioners, and it was held that it was.

These cases and many more that might be cited recognize the doctrine of *Henly* v. *The Mayor of Lyme.* I have no disposition to controvert the doctrine of any of them. I consider them based upon sound principles of law, but I fail to discover that they have any bearing upon the question under discussion.

I think the demurrer should be sustained.