(89 App. Div. 500.)

## McGAREY v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   December 30, 1903.)

1. MUNICIPAL CORPORATION—LIABILITY FOR NEGLIGENCE—INSPECTION.

The failure of a municipality to make tests as to the condition of trees in public places after a preliminary examination may be taken as a cir-. cumstance on the subject of its negligence in ascertaining whether the safety of the public requires any alteration in a case where such examination disclosed a condition from which suspicion of danger may fairly arise.

2. SAME—ACTION FOR INJURIES—EVIDENCE—SUFFICIENCY.

Evidence of negligence in an action against a city for injuries sustained by plaintiff from the falling of the limb of a tree while passing along the street examined, and *held* sufficient to sustain a verdict in his favor.

Bartlett and Jenks, JJ., dissenting.

Appeal from Special Term, Kings County.

Action by James McGarey against the city of New York.   From an order setting aside a verdict for plaintiff, the latter appeals.   Reversed.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Abram H. Dailey (Melville J. France, on the brief), for appellant. James McKeen (Patrick E. Callahan, on the brief), for respondent.

HOOKER, J.   The plaintiff had the verdict of a jury in his action against the defendant for injuries sustained by him as a result of being hit by a falling limb of a tree as he was passing along one of the public streets in defendant city.   Defendant's motion to set aside the verdict, made before the entry of judgment, was granted by the court, and from the order setting aside the verdict the plaintiff appeals to this court.

The limb of the tree which caused the plaintiff's injuries was about three inches in diameter and from three to four feet long.   It is described by the plaintiff and his witnesses as being "all rotten," and as having no branches.   It was noticed that it was decayed all through, and was covered with moss.   One of the witnesses saw some of the branches fall off the tree upon the ground during the month before the accident, and after that he never walked on the side of the street on which the tree stood.   He says that the branch which fell was rotten, which could be observed by the black inside, and by the fact that "the other part of the wood was crumbled."   One of defendant's witnesses, a police officer, whose beat was in the vicinity, says that when the branch fell it did not break in two, but broke about half a foot off the end.   He says it was decayed where it was broken off.   The de-

fendant's evidence, in the main, tended to show that the tree was in foliage during the summer before the accident and the summer afterwards, and that there was bark on the limb that fell; that where the limb parted from the tree there was a fresh break; that the tree was a live tree of brittle wood that breaks and falls easily. The court submitted the issues to the jury fairly, and sufficiently pointed out to them the rules of law governing actions of this character. Danaher v. City of Brooklyn, 119 N. Y. 241, 23 N. E. 745, 7 L. R. A. 592, was an action to recover damages for the death of plaintiff's intestate, alleged to have been caused by drinking unwholesome water from a well used gratuitously by the public, belonging to defendant, and under its control, on the theory of the negligence of the defendant in failing to use reasonable diligence to keep the well in repair and to guard against any danger resulting from its use. Judge Earl, in a carefully considered opinion, in which he collated many English and American cases upon related subjects, had this to say in relation to trees in public places:

"Trees, bridges, and other wooden structures will necessarily decay and become unsafe, and where they may thus become dangerous to human life the duty devolves upon the municipality to make tests and examinations, using reasonable diligence, to ascertain whether they are safe or not. Vosper v. Mayor, etc., 17 Jones & S. 296; Howard v. Legg (Ind. Sup.) 11 N. E. 614; Jones v. New Haven, 34 Conn. 13; Norristown v. Moyer, 67 Pa. 355."

We believe that this expression of the Court of Appeals correctly states the law upon this subject, at least as to the duty imposed upon the municipality to make proper examinations for the purpose of ascertaining the true condition of trees in public places. We can hardly believe that the municipality should be held always to the duty of making extraordinary tests preliminarily. The failure to make tests may well be taken as a circumstance upon the subject of the defendant's negligence in ascertaining, after a preliminary examination, whether the safety of the public requires any alteration in a case where such examination has disclosed conditions from which suspicion of danger may fairly arise. The jury, by its verdict, has found that the branch or limb in question was without twigs or offshoots or smaller branches; that branches had, for a considerable part of a month prior to the happening of the accident, fallen to the sidewalk from the same tree; that there was moss on the branch and moss on the tree. Had circumstances so grave as these existed in relation to municipal sidewalks or streets, it would have raised a presumption of constructive notice of the defect, and we believe that there was evidence to support the finding of the jury that notice of the condition of the branch of this tree would have been communicated to the defendant had proper inspection or examination been made. We think, too, that the jury was justified in finding that such inspection would have disclosed the dangerous character of the branch, or at least have put the defendant to a test of the strength of the limb. There is evidence in the record to show that at the point where the break occurred the tree was rotten. In that case it can scarcely be denied that, had the test been made, and defendant acted upon the showing thereof, the dangerous limb would not have been allowed to remain a menace to travelers.

The order setting aside the verdict of the jury must therefore be reversed, and judgment entered upon the verdict, with costs, and the extra allowance granted at the trial, together with costs of this appeal. All concur, except BARTLETT and JENKS, JJ., who dissent.

---

(89 App. Div. 308.)

### LAWSON v. ADAMS et al.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

**1. JUDGMENT—SETTING ASIDE—REVIEW.**

Code Civ. Proc. § 724, provides that the court, in its discretion, may release a party from judgment taken against him through mistake, etc. *Held*, that the discretion referred to is that of the Supreme Court, and that it is to be exercised in the first instance at the Special Term, and as, under Const. art. 6, § 1, the Supreme Court consists of all the justices of such court, the discretion of the judge at Special Term is reviewable by the Appellate Division.

**2. SAME.**

The Appellate Division has jurisdiction to reverse an order refusing to open a judgment under Code Civ. Proc. § 724, though there was not an actual abuse of discretion by the Special Term.

**3. SAME—MOTION—FACTS SHOWN—RIGHT TO RELIEF.**

Where a defendant moving for the setting aside of a default judgment showed that, on the day preceding the appearance of the case on the day calendar, defendant's attorneys moved their office, and their papers were thrown into confusion, and that no one in the office noticed that the case was on the day calendar, and there was a controversy that might have been tried under the pleadings, the motion should have been granted.

Jenks, J., dissenting.

Appeal from Special Term, Kings County.

Action by Judson Lawson against Thomas F. Adams and others. From an order denying defendant Adams' motion to open a default and restore the cause to the calendar, he appeals. Reversed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Lynn W. Thompson, for appellant.

John P. Everett, for respondent.