GEORGE MOSHER, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 28492.)

Court of Claims, February 10, 1948.

*Daniel D. Myers* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Arthur W. Mattson* and *Frank M. Noonan* of counsel), for defendant.

LOUNSBERRY, P. J. On April 16, 1947, at about 10:45 A.M., George Mosher, the claimant in this matter, was driving his car southerly along New York State highway 12-C at a point about a quarter of a mile north of Carey's Corners. A large limb fell from a tree onto his car, resulting in injuries to the claimant and considerable damage to the car, which went out of control and into a ditch. The claimant charges that the limb had been dead and decayed and in a dangerous condition for some time, and that the State was negligent in permitting such a condition to exist.

It is well established that the State may be responsible if it permits defective and dangerous trees or parts of trees to remain in locations where they may cause injury to users of the highways, provided, of course, that the State had actual or constructive notice of their condition. (*Messinger* v. *State of New York*, 183 Misc. 811; *Tagg* v. *City of Lockport*, 228 App. Div. 319, affd. 254 N. Y. 582; *McGarey* v. *City of New York*, 89 App. Div. 500; *Julian* v. *State of New York*, 187 Misc. 146.)

For the claimant to succeed in this action, he must establish, first, that he was free from contributory negligence; second, that the limb was in fact in a decayed and dangerous condition; third, that it was in such condition during the highway-patrol period in 1946, which, under section 58 of the Highway Law, ended November 15th of that year and did not resume until

May 1, 1947, which was after the accident; and fourth, that in the exercise of ordinary care during the patrol period the State should have detected the defective limb and removed it.

There is no difficulty in establishing the first point. The claimant was driving along in a perfectly normal manner. He had no warning that the limb was about to fall and could not have possibly avoided it when it did fall. Hence, there is no element of contributory negligence.

Establishment of the other points is quite another matter. The claimant, in addition to his own testimony, produced four witnesses who saw the limb after the accident. Their testimony is reasonably in agreement that the limb was from twenty to thirty feet long, and from ten to twelve inches in diameter at the butt end, and when on the tree was fifteen to twenty feet above the ground; that the bark was missing from a portion of the butt end; that there was some discoloration of the wood where the bark was missing; and that there was some sort of hole or hollow spot at or near the butt end. It had no leaves, but neither did any other limbs on the trees in the vicinity at that time of the year.

Over the State's objection we permitted these various witnesses to characterize the limb as dead and decayed. The State contends that they were not qualified to give such opinions. None of them was a tree expert, but it is not always necessary to be an expert in order to state opinions and conclusions. Ordinary witnesses, armed with ordinary common knowledge, may do so on subjects not requiring special study or skill. (*Collins* v. *New York C. & H. R. R. Co.*, 109 N. Y. 243; *People* v. *Deacons*. 109 N. Y. 374; Richardson on Evidence, §§ 523–526.)

In our opinion, any person who is normally observant and has lived for any considerable time where trees are fairly common is able to recognize a dead limb, even when the trees are not in leaf. We further think that such a person can distinguish between a decayed limb and a limb which is merely dead, provided that the decay has become sufficiently advanced as to be fairly apparent. Upon review of the record, therefore, we are not inclined to alter our rulings as to the statements that the limb was dead. We have concluded, however, that the statements that it was decayed were too broad in the light of evidence. The only observation supporting them was of one hollow spot or hole. This might fairly lead to the conclusion that there was an area of decay in the limb, but the testimony is vague as to how large an area and as to the progress of the decay. Apparently, it

would not have been visible or, at least, noticeable from the ground when the limb was still attached to the tree. As thus reduced in scope and significance, we feel that the statements can be allowed to stand for what they are worth. We do sustain the State's objection to the conclusions of some of the witnesses that the limb had been decayed for various periods from six months to two years. Only a person especially versed in the subject of tree diseases could properly express such an opinion, and these witnesses were not so qualified.

The claimant did produce a Davey Tree Company employee, who had never seen the limb, and who, in answer to a hypothetical question based on the most favorable inferences from the rather confusing testimony in the case, stated that the limb had been decayed from one to twenty years. This seems to us to be at once too general and based on too insecure a foundation, and, in any event, it affords little help in determining whether the condition, if it existed, had reached dangerous proportions, or was even observable upon ordinary inspection.

This leads to the decisive question, which is whether the State had notice of the condition of the limb, assuming that it was in fact dead and decayed. There is no evidence of actual notice and insufficient evidence, we think, of constructive notice. The State foreman, in charge of patrol and light maintenance along the highway where the accident occurred, testified that he had observed the limb prior to the accident; that no bark was missing from it, that no hole or decayed area was visible, and that there was nothing about it to indicate that it was in a dangerous condition. His testimony may not have been wholly disinterested, but the claimant has been unable to disprove any of it. Neither he nor his witnesses knew whether the bark was off before the limb fell or broke off upon its impact with the car and the highway. None of them could say that the hole was visible from the highway, and some of them thought that it probably was not. Furthermore, the foreman testified that the limb did not overhang the roadway but was swung around and over onto the car and highway by the wind, which all witnesses agreed was strong at the time of the accident. If this is true, and the claimant has not contradicted it, it is obvious that the limb would not have merited as close attention as if it had overhung the roadway.

The only evidence on the subject of inspection shows that the maintenance workers did patrol the area frequently and did make observations of tree conditions.

We conclude, therefore, that the claimant has failed to prove that the State had notice, actual or constructive, of any dangerous or defective condition of the limb warranting its removal. In the absence of such proof, the claim must be dismissed.

Over claimant's objection, some evidence was introduced concerning payment for damages received by the claimant from an insurance company by means of the device known as a "loan receipt". The "loan receipt" itself was excluded from the evidence upon the State's objection. These rulings are contested and decision reserved, but in view of our foregoing decision we deem it unnecessary to resolve this further issue. The evidence concerning these matters was given no consideration in the decision of the case.

The claimant has failed to prove the negligence of the State, as alleged, by a fair preponderance of the competent evidence. Therefore motion for dismissal, made by the State at the close of the trial, is granted and the claim dismissed.

Findings of fact and conclusions of law may be submitted in accordance with this memorandum within ten days, otherwise this opinion will be considered the decision.

Let judgment be entered accordingly.