NICHOLS v. NEW YORK & P. TELEPHONE & TELEGRAPH CO.

(Supreme Court, Appellate Division, Fourth Department.   May 13, 1908.)

1. EVIDENCE—PAROL EVIDENCE AFFECTING WRITINGS—GRANT TO TELEPHONE COMPANY.

Where the written grant under which a telephone and telegraph company claimed a right to construct its line over and along premises and to cut trees was silent as to the precise location of the poles, their height, or the manner or particular place of crossing the premises, it was competent, as bearing on the matters respecting which the writing was silent and on the question of the reasonable use of the right given, to supply and supplement the grant by oral proof of the surrounding circumstances.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 2129–2133.]

2. APPEAL—REVIEW—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Though a telephone and telegraph company may have had the right, under the written grant to it, to construct its line over and along premises and to put up as many cross-arms as were necessary, and though evidence that its right of way agent had said that but one, or at most two, cross-arms would be put up may be at variance therewith, the admission of such evidence, in an action for unnecessarily cutting trees on the premises, was harmless, where but one cross-arm was put up.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4153–4160.]

3. SAME.

Though the district superintendent of a telephone and telegraph company may have had no authority to make the statement that a property owner was entitled to more than $10 damages for cutting his trees, which was the amount paid him for the right to construct the line over and along his property and in full satisfaction for trimming trees, yet evidence of such statement, in an action for unnecessarily cutting the trees on the premises, was not harmful, where the undisputed evidence was that the owner actually sustained damages to the extent of $150 to $200.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4161–4170.]

4. TELEGRAPHS AND TELEPHONES—WRONGFUL CUTTING OF TREES—MEASURE OF DAMAGES.

The measure of damages for the unnecessary cutting of trees so as to substantially injure them by a telephone and telegraph company, under a grant of the right to construct its line over and along premises and trim the trees thereon, is the difference between the value of the premises before and after the trees were cut and mutilated.

McLennan, P. J., dissenting.

Appeal from Steuben County Court.

Action by Jesse L. Nichols against the New York & Pennsylvania Telephone & Telegraph Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

The action is brought to recover damages for the cutting of plaintiff's shade trees. The defendant claims that right under an instrument in writing executed by the plaintiff, which is as follows:

"December 28, 1905.

"Hornellsville Town, Steuben County, New York State. $10.00. Received of New York & Pennsylvania Telephone & Telegraph Company, ten dollars, in consideration of which I hereby grant unto said company, its successors and assigns, the right to erect and maintain its poles and lines over and along my property, including the necessary poles, fixtures, guys, and

braces, and in full satisfaction for the trimming of any trees along necessary to keep the wires cleared at least 18 inches.

"Witness my hand this 28th day of December, 1905, at Hornellsville, N. Y. (Post Office Address.)     J. L. Nichols, Landowner. [L. S.]

"Witness: R. T. Freeman."

Indorsed:

"Right of Way Department. Approved: Chas. D. M. Cole, by F. J. Perkins."

Plaintiff recovered a verdict in the sum of $140, and the defendant appeals from the judgment entered thereon, and from the order denying its motion for a new trial, made upon the minutes of the presiding judge.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

James A. Parsons, for appellant.
Floyd E. Whiteman, for respondent.

KRUSE, J. The defendant gave no evidence upon the trial, but rested upon the case made by the plaintiff. It challenges the sufficiency of the evidence to award any verdict against it, and also contends that evidence was admitted, against its objection and exception, which constitutes error* so prejudicial to it as to require the reversal of the judgment entered upon the verdict. We are of the opinion that the evidence sustains the verdict, and that, even if some of the evidence was incompetent, it may be disregarded as harmless, and the judgment upheld.

As appears by the answer of the defendant, it claims the right under the contract of December, 1905, to enter upon the premises mentioned in the complaint for the purpose of erecting and maintaining poles, wires, and necessary fixtures, and trimming and cutting trees necessary to clear the wires. It further alleges in its answer that in consideration of the sum of $10, paid by it to the plaintiff for said right, the plaintiff fully discharged and released it from any and all liability for the erection of poles, wires, and fixtures, and trimming and cutting said trees. Plaintiff admits the making and execution of the writing of December, 1905. The undisputed evidence shows that in December, 1905, one Freeman, assuming to act for the defendant, entered into negotiations with the plaintiff to permit the defendant's telephone line to cross his premises. The plaintiff's premises consisted of a dwelling house and lot in the city of Hornell, with a row of shade trees in front of the house, near the margin of the street. At the time of the negotiations and the execution of the paper there were poles near the plaintiff's premises, but not set up. The poles were at least 70 feet long. Freeman called plaintiff's attention to the poles, saying that they had brought exceptionally long poles to bring the wires above the trees, where there would be no damage to the trees, no trimming, only small limbs on the top, to be done with pruning shears. The defendant's counsel specifically objected to the statement of Freeman as to what length of poles would be set and what sort of trimming would be done by the defendant, upon all the grounds which he had theretofore stated, and upon the further ground that

the statement tends to limit, modify, and vary the rights granted under the agreement, and limits it to a certain kind of pole, certain kind of trimming, etc., and moved to strike out the statement. The motion was denied and an exception taken.

The plaintiff further testified that he was told there would be but one cross-piece put on the poles; that it might be necessary to put on an extra one, and that the pole would be set up the hill far enough so that he (Freeman) would have to trim only one tree; that he told Freeman, rather than have any trouble or fight about it, or go to law, he would let them go through; that Freeman said they would give him $10, which he accepted, and signed the paper. Ten feet was cut off the small end of the poles which were lying near the premises. The plaintiff asked Freeman what they meant by cutting the pole off, and he replied that it was necessary, because the pole was higher than the other poles; that he could not hold it up; that if he set the pole higher up the bank, it would practically bring the wire above the tree, and would necessitate no more trimming than if set lower down the bank. When the poles were put in position they were placed four feet lower down the bank than the plaintiff was told they would be placed. Here is what was done in trimming the trees (I quote from the plaintiff's testimony):

"These men came there and climbed up the trees, where they could get at it handy, and sawed off the limbs of the largest tree. The biggest branch was cut off 16 feet and 4 inches from the wires, the other branch was cut off 15 feet, and the next tree they cut off 12 feet and 10 feet from the wires. On the smallest tree, up in the yard near the house, they trimmed clear the wires 13 feet."

Plaintiff further testifies that the limbs were from $4\frac{1}{2}$ inches to 5 inches in diameter, that the limbs were cut where they branched off the tree, and that when they took off one limb they took off about twenty. The trees were so mutilated as to lessen the value of the premises from $150 to $200. That is shown by the undisputed testimony. The jury found a verdict for the sum of $140. While there is no evidence showing that Freeman was specifically authorized by the defendant to make the agreement, yet the circumstances are such as to show that the defendant ratified the same. The plaintiff was entitled to recover all the damages sustained by the cutting of his trees, except to the extent that the defendant had the right to cut them, and it was incumbent upon the defendant to establish that right and to exercise it in a reasonable manner. I am unable to see why it was necessary to cut the branches as was done. The wires were to be cleared but 18 inches. It it was necessary, the defendant should have made that fact to appear. The instrument under which the defendant claimed this right is entirely silent as to the precise location of the poles, their height, or the manner or particular place of crossing the plaintiff's premises. As bearing upon the matters respecting which the writing is silent, and also upon the question of the reasonable use of the right given to the defendant, I think it was competent to supply and supplement the writing by oral proof of the surrounding circumstances. Dexter v. Beard, 130 N. Y. 549, 566, 29 N. E.

983. While it is possible that some of the oral testimony does not fall within the rule permitting parol evidence to be given to supply an obviously incomplete agreement, still, in view of the uncontradicted facts, no prejudicial error was committed in receiving the same.

It is contended that the defendant had the right, under the written contract, to put up as many cross-arms as were necessary, and that the statement of Freeman that but one, or at most two, would be put up, was at variance therewith. Assuming that to be true, I fail to see how the evidence could do any harm, since there was but one cross-arm put up. While it is true, as is suggested, that there is no dispute that the poles were erected and the line run through the plaintiff's front yard, as was talked between the plaintiff and the defendant, it is also true that they were not erected in the precise place where it was agreed they should be placed, but about four feet lower down the bank, thus lowering the wires beyond what it was contemplated they should be. It is also contended that Dixon, the defendant's district superintendent, had no authority to make the statement that the plaintiff was entitled to more than $10 damages for cutting the trees. Assuming that to be true, how could it do any harm, in view of the undisputed evidence showing that the plaintiff actually sustained damages to the extent of $150 to $200? There are other bits of evidence which might be singled out as incompetent, but none which we think would justify reversing the judgment. Not only were the poles shortened 10 feet, but they were put 4 feet lower down the bank, and the trees were trimmed from 10 to 16 feet from the wires. These circumstances were permitted to go unchallenged and unexplained by the defendant, and no proof was given to contradict the evidence showing that the value of the premises had been injured by the cutting of the trees to the extent of $150 to $200.

The case of Barber v. Hudson River Telephone Company, 105 App. Div. 154, 93 N. Y. Supp. 993, relied upon by the appellant, we think is not at variance with the views which we have expressed. The question here urged, that the oral testimony contravenes the writing, was not presented in that case.. There was no question as to the location of the poles, their height, nor the manner or place of crossing the premises, as in this case. What was complained of there was the adding of additional cross-arms; and upon the bare writing itself it was held that the telephone company had the right to add additional cross-arms if it was necessary for the purpose of conducting its business, and the action was tried upon the theory that the defendant was a trespasser ab initio, and had no right whatever to cut the trees. Such is not the claim here. The plaintiff contends that it was not necessary to cut these trees so as to harm them, and the evidence supports that claim. In view of the nominal sum paid and the other circumstances in this case, it is quite apparent that under the terms of the contract it was contemplated that the defendant would do no substantial injury to the trees. In that view, the proper measure of damages was adopted, namely, the difference between the value of the property before and after the trees were cut and mutilated. Evans v. Keystone Gas Company, 72 Hun, 503, 25 N. Y. Supp. 191, affirmed 148 N. Y. 112, 42

N. E. 513, 30 L. R. A. 651, 51 Am. St. Rep. 681. We think, upon the undisputed facts, the plaintiff was entitled to recover.

The judgment should be affirmed, with costs. All concur, except McLENNAN, P. J., who dissents in an opinion.

McLENNAN, P. J. (dissenting). The action was brought to recover damages alleged to have been sustained by the plaintiff, which resulted from cutting or trimming certain shade trees belonging to him by the defendant, as is claimed, without right or authority. Judgment was awarded in Justice's Court in plaintiff's favor for $200 damages and $10 costs. From such judgment an appeal was taken to the County Court, where a new trial was had, resulting in a judgment in favor of the plaintiff for $140 damages and $70.80 costs, and from that judgment this appeal is taken.

On the 28th day of December, 1905, one Freeman, defendant's right of way agent, called upon the plaintiff and entered into negotiations for procuring a right of way for the defendant's telephone line over and along the premises in question, which at the time were owned by one Bridget Kelly, but occupied by the plaintiff under a contract of purchase. Such negotiations resulted in the execution by the plaintiff on that day of a grant to the defendant of the right to construct its line across said premises. Such grant is in the following words and figures:

"December 28, 1905.

"Hornellsville Town, Steuben County, New York State. $10.00. Received of New York & Pennsylvania Telephone & Telegraph Company, ten dollars, in consideration of which I hereby grant unto said company, its successors and assigns, the right to erect and maintain its poles and lines over and along my property, including the necessary poles, fixtures, guys, and braces, and in full satisfaction for the trimming of any trees along necessary to keep the wires cleared at least 18 inches.

"Witness my hand this 28th day of December, 1905, at Hornellsville, N. Y. (Post Office Address.)                    J. L. Nichols, Landowner. [L. S.]

"Witness: R. T. Freeman."

Indorsed:

"Right of Way Department. Approved: Chas. D. M. Cole, by F. J. Perkins."

Subsequently, and on the 31st day of January, 1906, but before the commencement of this action, Bridget Kelly, by an instrument in writing duly executed by her, conveyed to the plaintiff all her right, title, and interest in and to any cause of action which she had against the defendant because of any act done by it in the premises.

The language of the grant or agreement executed by the plaintiff and delivered to the defendant is not ambiguous, and if given its ordinary meaning there can be no doubt as to the rights of the respective parties thereunder. An agreement almost identical in its language was construed in the case of Barber v. Hudson River Telephone Co., 105 App. Div. 154, 93 N. Y. Supp. 993. The court in that case held in substance that such instrument conveyed an easement unlimited in time, that the defendant acquired the right to trim the trees for as many wires as

necessary to enable it to properly conduct its business, that damages could only be recovered for trimming the trees beyond what was so necessary, and that the measure of damages was not the difference in the value of the premises before and after any cutting. The court said:

"It is for the excessive cutting only that he [the defendant] has any right of action, and there is no attempted proof as to the damage caused to the premises by the excessive cutting alone."

The defendant in this case acquired the right by the terms of the grant to use as many cross-arms and string as many wires as was reasonably necessary to enable it properly to conduct its business, and also acquired the right to trim plaintiff's trees to such an extent as was necessary to clear, under ordinary conditions, the wire for a distance of at least 18 inches. It would be unreasonable to hold that the line to which the defendant is entitled to trim the trees in question must be determined by measuring from the upper and outside wire a distance of 18 inches when the branches of the trees were perfectly still. If only trimmed to that extent, it is apparent that, when the trees were swayed by the wind or loaded with ice, the branches would come in direct contact with the wires and prevent defendant from properly conducting its business. Besides, that is not the language of the grant. It provides "for the trimming of any trees along necessary to keep the wires cleared at least 18 inches." The plaintiff in this case has not recovered because the defendant violated the terms of the agreement above quoted; but he was permitted to prove an entirely different contract, made, as he alleges, by parol at the time or before the written contract was executed, and it is because the defendant, as it is claimed, violated the terms of such parol agreement that the recovery was had. In submitting the case to the jury the court said:

"You have heard the verbal conversation leading up to the giving of this receipt, or contract, or whatever it is [the writing above quoted]. * * * Now it is for you to say whether this [the writing] contains an agreement, and whether, after receiving this $10 mentioned in this paper, whether he [the plaintiff] is now precluded from recovering any damage caused by any acts of the defendant, by any of its agents, growing out of matters mentioned in this paper. It is for you to hear the conversation which led up to the making of this contract or paper which was signed by this plaintiff."

The oral agreement, which the plaintiff was permitted to prove over defendant's objection and to all of which exception was taken, was in many of its essential parts in conflict with and varied the terms of the written instrument, as construed in the case of Barber v. Hudson River Telephone Company, supra, and so without reference to any adjudicated case and as matter of common sense. The plaintiff testified:

"He [Mr. Freeman, who was obtaining the right of way for the defendant] told me that he was the representative of the New York & Pennsylvania Telephone & Telegraph Company. He was there to get the right to go through my property. I asked him where he wanted to go through. He told me. He showed me where they were going through the front yard, cutting off my shade trees. I asked him to go through back of the house. He says they couldn't change their line, as the survey was made there; they had a perfect right to go there, with or without my consent. He further showed me the poles they had brought there, long poles, exceptionally long poles, the words he used,

to bring the wires above the trees where there would be no damage to my trees, and wouldn't call for no trimming, only the small limbs on the top, to be done with pruning shears. I asked him how many cross-pieces was going to be put on the poles. He told me only one. * * * Said in the future sometime it might be necessary to put on one more cross-piece, but never would be more than one put on. * * * Then spoke to him about putting the poles a little higher up the hill, where they wouldn't affect only one tree. * * * He told me would set the pole up the hill far enough so he wouldn't have to trim only one tree; wouldn't hurt the other two trees. Further told me he would be there in person and see that the trimming of those trees was done by experienced tree trimmers. Both sides of the trees would be trimmed all even, so it wouldn't spoil the looks of the trees. * * * He said they would give me $10; that is all they would give me. So I accepted it. * * * I signed the paper."

It appears that before the $10 was paid and the final writing signed defendant had cut off 10 feet from the small end or top of the poles, and these were lying there on the ground after being so cut, and the plaintiff was allowed to testify that after the paper in question was signed he had a conversation with Mr. Freeman, all of which was objected to, as follows:

"Q. After this paper was signed, wasn't there some conversation had between you and Mr. Freeman in the presence of your wife? A. Yes, sir; when he came back to pay me the $9, they cut the pole off at that time. Of course, when I asked him what they meant by cutting that pole off, he said it was necessary to cut the pole off, because the pole was higher than the other poles there; couldn't hold up the pole—such a long pole—there, where they were going to set the pole. He said, if he set the pole higher up the bank, practically bring the wire above the tree, and wouldn't necessitate any more trimming than if they set it down the bank lower. * * * "

Then plaintiff was permitted to tell what his wife said. His wife said that it was mentioned in the contract that they had the right to trim the trees 18 inches from the wires; that they might string the wires clear to the bottom of the poles—"might put cross-pieces clear to the bottom of the poles, and destroy our trees; and Mr. Freeman said: 'No, sir; I will guarantee you we will never put one on, at present; never put one more cross-piece.' At that time he gave me $9, and had previously given me $1." It is apparent, as it seems to me, that this conversation varies and materially changes the agreement expressed in the writing. By the terms of the written agreement the defendant obtained the right to erect and maintain its poles and lines over plaintiff's property, including the necessary poles, fixtures, guys, and braces, and in full satisfaction for the trimming of any trees along necessary to keep the wires clear at least 18 inches. According to the oral agreement:

"He agreed to erect exceptionally long poles, so as to bring the wires above the trees, where there would be no damage to my trees, and wouldn't call for no trimming—only the small ends on top, to be done with pruning shears."

Nothing of that kind appears in the writing. That conversation materially restricts the defendant's rights acquired by the written contract. According to the conversation the defendant agreed that for the present there should only be one cross-arm, and never to exceed two. The written contract provides that there may be such poles, fixtures, guys, and braces as are necessary. According to the conversation the

defendant's representative agreed that he would set the poles higher up the hill, so as to clear practically the defendant's trees, or at least so as to only require one "tree to be trimmed, and wouldn't hurt the other two trees at all." The defendant also agreed, according to the conversation, that Freeman would be there personally, and that whatever trimming was done would be done by experienced tree trimmers, and so as not to spoil the looks of the trees. Nothing of that kind appears in the written agreement.

I think, under the authorities, this conversation was all incompetent, because it tended to vary and change the terms of a contract which was in writing. It is possible that, the contract being silent as to the precise location of the line, if a conflict had arisen between the parties as to where the line should be located, what was said previous to the execution of the writing might be given as bearing upon what was a reasonable exercise of the rights conferred by the writing; but there is no dispute that the line of poles was erected exactly where it was agreed through the plaintiff's yard and past the trees in question. But the written contract does speak with reference to the other matters mentioned in the oral agreement. The defendant had acquired the right to string such wires, put up such cross-arms, and use such poles as were reasonably necessary for the proper conduct of its business—had a right to trim the trees in such manner as was reasonably necessary; and it was utterly incompetent to modify such right by a conversation had at the time of its execution or previous thereto.

It seems to me to be perfectly clear that it constituted reversible error to permit the jury to determine the rights of the parties upon the alleged oral agreement, which was practically substituted in the place of the written contract. That this cannot be done, with all due respect to the majority of the court, is, as it seems to me, axiomatic. There should be no controversy in this case as to the facts, because the defendant offered no evidence and stands squarely upon its exceptions to the evidence offered by the plaintiff. The written agreement grants to the defendant the "right to erect and maintain its poles and lines over and along my [the plaintiff's] property, including the necessary poles, fixtures, guys, and braces." The oral agreement is to the effect that poles of a certain length must be erected and set so as not to cause damage to plaintiff's trees, and the trimming of such trees, if any, must be done in a particular manner, by experienced tree trimmers, and in the presence and under the supervision of defendant's right of way agent. It is only necessary to read the oral conversation and the written agreement contained in the record to discover that they make out and constitute entirely different contracts, and that the duties imposed by the former upon the defendant are much more onerous and restricted its rights more than anything that could be regarded as within the scope or meaning of the written contract.

In the case of Corse v. Peck et al., 102 N. Y. 513, 515, 7 N. E. 810, Judge Andrews, writing the opinion for the court, said:

"The rule that parol evidence is inadmissible to add to or vary the terms of a written contract precludes evidence of the negotiation which preceded or conversations which accompanied the making of it in relation to the subject-matter thereof, unless necessary to explain ambiguous provisions, the mean-

ing of which cannot be ascertained with certainty by an inspection of the written instrument."

In Mott v. Richtmyer et al., 57 N. Y. 49, the court said (page 59):

"The rule which excludes such evidence applies not only to prior or cotemporaneous oral declarations, but with equal force to subsequent declarations. The object of putting agreements into writing is to exclude, as said by Lord Coke, a resort to 'the uncertain testimony of a slippery memory.' A writing would be of little consequence, unless in construing it judges are to be confined to the language used. They may resort to surrounding circumstances, so as to stand in the very light, as near as possible, which the parties stood in. But this they may do, not to import anything into the writing which is not expressed by the language used, but that they may understand the language, and whatever the language is found clearly to import, must be held to have been intended by the parties, no matter how strongly facts not contained in the writing point to a contrary intention. The intention, after a resort to such helps as the law allows, must be sought for in the writing alone."

In the case of Herman v. Roberts, 119 N. Y. 37, 23 N. E. 442, 7 L. R. A. 226, 16 Am. St. Rep. 800, the court said:

"In considering the extent of the rights of the respective parties in the grant of a right of way, it is not proper to refer to the parol negotiations which preceded its execution or the colloquium accompanying it (Bayard v. Malcom, 1 Johns. 467; Renard v. Sampson, 12 N. Y. 561; Long v. N. Y. C. R. R. Co., 50 N. Y. 76); but we are to regard the language of the grant, and, when that is uncertain or ambiguous, the circumstances surrounding it and the situation of the parties, with a view of arriving at the true intent of the parties."

It is not alleged or claimed on the part of the plaintiff that there is any evidence in this case tending to show that any fraud was practiced upon the plaintiff, or that he was induced to execute the grant because of any false statements made by the defendant, nor was he in any manner prevented from knowing the contents of the writing signed by him. While he does say that he signed the paper in blank, he does not pretend that he gave any instructions as to what matter should be inserted in such blank agreement, or that it was stated to him that anything else would be stated other than appears in the contract.

I think reversible error was also committed by the learned trial court in admitting over defendant's objection the evidence as to what the defendant's alleged superintendent said in regard to the plaintiff's claim or cause of action. The plaintiff says that a Mr. John Dixon was manager of this district (the Hornellsville district of the defendant); that he (said Dixon) told the plaintiff that he was such manager; that he (the plaintiff) had a conversation with Dixon in January, 1906, with regard to what took place; and such conversation, as testified to by the plaintiff, is as follows:

"I asked him if he (Dixon) was manager of the Bell Telephone Company. He said he was. I told him I had just started up to look for Freeman (who obtained the right of way for the defendant); asked him if he could tell me where he was. He said he was in Buffalo at that time. He wasn't working for the company then, he didn't think. I asked him what he thought of the way they had trimmed those trees down there. He thought it looked in pretty bad shape, he said. * * * He said I was entitled to more than $10. Q. He said you was entitled, didn't he? A. Yes, sir; he said: 'You would be entitled to more than that, but I haven't any authority to make any agreement with you. Mr. Freeman was the man that bought the right of way

through there.' He (Dixon) didn't have anything to do with the buying of the right of way. All he had to do was putting up poles and wires. He had charge of it at that time for buying right of way, and he didn't have anything to do with it. * * * Mr. Dixon said Mr. Freeman had no right to agree to come down, to say he would be there in person for trimming those trees. Mr. Freeman had nothing to do with the trimming of the trees. It was his (Dixon's) men that trimmed the trees. He (Dixon) had charge of that part of it; his men that done the trimming, not Freeman."

This evidence was all objected to, and an exception taken by the defendant, and after it was given, a motion was made to strike it out, and upon the denial of such motion another exception was taken. It hardly seems necessary to cite authorities to support the proposition that the admission of the evidence constituted reversible error. It can hardly be claimed that it was competent for Dixon, even assuming that he was defendant's superintendent, to admit defendant's liability, when it is not claimed that his admission was in any way a part of the res gestæ; and still by this evidence the fact was before the jury that the defendant's superintendent admitted that the $10 paid to the plaintiff did not measure the damages sustained by him, and that the agent of the defendant, who was engaged in securing the right of way, should not have represented, as he did, the conditions which would prevail after the line was inaugurated. The admission of such evidence constituted error, and it cannot be said that it was not harmful to the defendant upon the question of damages. If the jury believed plaintiff's statement that the superintendent of the defendant had said that $10 did not represent the damages sustained by the plaintiff, it cannot be said that such statement did not influence the jury in rendering the verdict which they did.

Error which requires the reversal of the judgment was also committed in receiving the evidence, offered over defendant's objection, offered to prove the plaintiff's damages. Plaintiff stated that he was familiar with the value of real property in the vicinity; that he had bought and sold it, and had known of it being bought and sold. Then the question was asked:

"Q. Now, before these shade trees were trimmed, and in the condition in which the property was on the 28th day of December, 1905, what would you say it was reasonably worth?"

This was objected to as immaterial, irrelevant, incompetent, and not the proper measure or basis of damages. The objection was overruled, and an exception taken, and the answer was, "$1,000." He was then asked: "Q. What, in your opinion, is it worth now?" The same objection was made, the same ruling and exception, and the answer was, "$800," and he further stated that after the trees were trimmed, and at the time of the commencement of the action, he did not consider the property worth to exceed $800. It seems to me clear that such evidence in no way measured the damages which the plaintiff sustained, but that, as stated in Barber v. Hudson River Telephone Co., supra, the rule is that the only damage which the plaintiff was entitled to recover is for the excessive cutting, and that for such excessive cutting only has he any right of action. No proof was given tending to show the damages resulting from excessive cutting, and therefore no proper evidence

was submitted upon which the jury were authorized to base a verdict. In this case, as was said in that case:

"The action was apparently tried at the Trial Term upon the theory that the defendant was a trespasser ab initio and had no right whatever to cut the trees."

Such conclusion is not justifiable, even under the oral contract which was testified to. Under that the defendant was entitled to cut the trees some. Still the verdict of the jury is based upon the proposition that the defendant was not entitled to trim the trees at all. I conclude that the proof given as to the oral conversations and negotiations had between the parties at the time of or prior to the execution of the written instrument was incompetent; and that the reception of such evidence was harmful to the defendant is apparent, also that it was incompetent for the plaintiff to show what the defendant's superintendent, or a man in its employ, said about the plaintiff's claim, or the merits of·his action after the execution of the contract, and also that evidence was erroneously admitted tending to establish plaintiff's damages.

The plaintiff is not without remedy in this case. If the defendant has not properly exercised its rights under the written agreement, has unnecessarily injured his trees, he is entitled to recover for such damages so unnecessarily inflicted. It seems to me that the ordinary rules of law, which have been recognized from the earliest period in our jurisprudence, should be adhered to, even if it results in a new trial, where plaintiff will be at liberty to prove his cause of action, if any, in accordance with the law of evidence and the principles established by the courts of this state from time immemorial.

I think that the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide event.