PAULINE JULIAN, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 27944.)

NICHOLAS JULIAN, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 27945.)

LILLIEN KLIMAN, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 27946.)

Court of Claims, July 18, 1946.

*James C. Tormey* for claimants.

*Nathaniel L. Goldstein, Attorney-General (Frank M. Noonan* of counsel), for defendant.

LOUNSBERRY, J.   All three of the above-entitled claims against the State arose out of the same accident and were tried as one claim.

The claimant, Nicholas Julian, was driving his automobile, in which his wife, the claimant Pauline Julian, and his step-daughter, the claimant Lillien Kliman, were passengers, northerly along State Highway No. 11 at about 7:00 o'clock in the evening of May 18, 1945.   He had reached a point just inside the south line of the unincorporated village of Mannsville when a large limb of a maple tree, located on the easterly side of the highway, fell across the highway immediately in front of his automobile.   The automobile collided with the limb and all the claimants suffered some injuries, and the car was damaged extensively.

There is no evidence of unusual weather or driving conditions or that the Julian automobile was operated negligently.   It was a clear, fair day.   There is no evidence that the collision could have been avoided.   There was naturally no warning that the limb was about to fall, and there was no time to stop when it did fall directly in front of the automobile.

The tree from which the limb fell was located seven feet from the edge of the pavement, two and one-half feet outside of the edge of the shoulder and two feet outside the sidewalk line.   The limb which caused the accident was a large one consisting of two branches and broke from the tree about fifteen feet from the ground.   One portion of the limb which fell on the highway was thirty-one feet in length and one foot in diameter at the break. The other limb was twenty-seven feet in length and two feet four inches in diameter at the thickest part of the break; the average diameter being about one foot six inches.   The side of the tree from which this branch broke away had a decayed area reaching from the ground to the point where the branch began from which area the bark was missing.   A tree expert, from the New York State School of Forestry at Syracuse, New York, testified that this portion of the tree had evidently been killed as a result of a serious injury some time in the past and that the limb had partially broken away from the tree many years previously; that the tree was in a badly decayed condition; that this condition must have existed for at least ten years and was easily discernible from the highway.

" The maintenance and repair of improved state highways in towns and incorporated. villages  *  *  *  shall be under the direct supervision and control of the superintendent of public works and he shall be responsible therefor." (Highway Law, § 12.) " It is well established that the State highways must be maintained in a safe condition for travel, not only as respects defects and obstructions in the traveled portion of the roadbed, but also as respects conditions adjacent to and above the highway which could reasonably be expected to result in injury and damage to the users thereof." (*Messinger* v. *State of New York*, 183 Misc. 811, 812; *Doulin* v. *State of New York*, 251 App. Div. 767, affd. 277 N. Y. 558.)

This responsibility extends to trees along the highway. (*Messinger* v. *State of New York*, *supra*; see, also, *Tagg* v. *City of Lockport*, 228 App. Div. 319, affd. 254 N. Y. 582; *McGarey* v. *City of New York*, 89 App. Div. 500.) Under section 322 of the Highway Law, no such trees, if within the bounds of the highway, and except in villages of the first and second class (Mannsville is a village of the fourth class) can be cut down, removed or destroyed without the written consent of the Superintendent of Public Works. It follows from this that responsibility for the removal of defective and dangerous trees within State highway bounds must necessarily rest upon the State.

In the present case, it is true, so far as the evidence shows that the State had never had actual notice of the defective and dangerous condition of this tree. Nevertheless, the condition was of long standing and was readily discernible from the highway. A casual passerby might not have noticed it or given it any thought if he had noticed it, but the highway patrolmen, instructed, as the evidence shows, to report defective conditions in trees along the road, ought to have discovered it in the exercise of reasonable diligence. To quote again from *Messinger* v. *State* (183 Misc. 811, 812, *supra*), where a defective limb was also the cause of an accident: " The State defends the within action on the ground that it was a fortuitous happening that could not reasonably be anticipated. This defense we hold is without merit. The highway patrolmen were bound to perform their duties in a diligent and thorough manner, and had they done so in the present instance, would have noticed that the trees were old and that broken and lifeless branches suspended in the treetop were eventually bound to fall, and if coincident with the passage of users of the highway would result in injury and damage.

" We hold that the State is liable for allowing a condition to exist which should have been observed by the patrolmen in the performance of their ordinary duties."

The decision of *Tagg* v. *City of Lockport* (228 App. Div. 319, *supra*) is also significant in this situation, since it charges a municipality with a duty to exercise reasonable diligence in making inspections and tests of shade trees along its streets, and with liability where there is a failure to make such inspections and to remove an obviously defective tree or limb, and an injury results.

The State, through its highway employees, was under a duty to make a reasonable inspection of this tree and to take steps to eliminate the dangerous condition, which such inspection would have revealed. The dangerous condition of this tree was never reported, nor was any action taken to eliminate it and such failure to inspect and to take action amounted to negligence on the part of the State for which it is liable to respond in damages for the resulting injuries.

The injuries and damages suffered by the claimants do not appear to be very extensive. Nicholas Julian apparently sustained two fractured ribs, a sprain of the right ankle and various bruises, and was absent from his business three or four weeks. Pauline Julian suffered a marked bruise of the chest, a strain of the sacroiliac joint, and considerable nervous shock, and remained home about a month. Lillien Kliman received some abrasions and strains, which did not incapacitate her. None of the injuries is claimed to be permanent. Medical expenses incurred by Nicholas Julian are limited to $28 paid for himself and his wife, as set forth in the bills of particulars, and the damage to his car is limited to the $650 stipulated on the trial. His loss of earnings is limited by his claim to $400. There was no satisfactory proof as to the value of his wife's services.

The claim of Pauline Julian for loss of earnings from employment by her husband is rejected, both on the ground of lack of satisfactory proof and on the authority of the decision in *Blaechinska* v. *H. Mission and Home* (130 N. Y. 497). The claim of Lillien Kliman for loss of supposed earnings from her stepfather is also rejected for failure of proof.

In view of the foregoing, an award is made against the State of New York for damages sustained by the claimants in accordance with the findings accompanying this memorandum.