Bernard Ryan, P. J.
Claimants as tenants in common are the owners of a building lot with 130 feet frontage and 183 feet depth located on the north side of Bast Main Street in the Village of Attica. Bast Main Street is State Highway No. 238. Claimants’ title extends to the center line of the 4-rod road. A 60-year-old Norway maple tree with a diameter of 12 to 15 inches stood on claimants’ lot but within the highway right *80 of way. On November 20,1957 employees of the State Department of Public Works cut down the maple tree and carted it away. This was done without notice to the claimants or to the town authorities or to the village authorities. The claimants sue the State in tort, alleging that by loss of the tree they have sustained damages in the amount of $750 and that by virtue of sections 533 and 534 of the Real Property Law they are entitled to recover treble that amount.
Shade trees enhance the value of a building lot and although standing in a highway right of way are an attribute for which monetary award may be made against the condemnor exercising the right of eminent domain. (Matter of Goodrich v. Village of Otego, 216 N. Y. 112 [1915].) However, the abutting owner has no proprietary interest which prevents the public authority, State or municipal, from improving the street to its entire width. (Donahue v. Keystone Gas Co., 181 N. Y. 313 [1905]; Matter of County of Nassau, 159 Misc. 52 [1936].) And where the public owns the fee of the street the abutting owner has no proprietary right which defeats the purpose of the public authorities in removing the trees, in their discretion. But that discretion must not be abused. (1 Lewis, Eminent Domain [3d ed.], § 190, pp. 347-349 and cases cited.) The liability of a third-party wrongdoer to the abutting owner is well established. (Donahue v. Keystone Gas Co., supra.)
Decisions in Messinger v. State of New York (183 Misc. 811 [1944]) and Julian v. State of New York (187 Misc. 146 [1946]) and other cases — all dependent in turn on Tagg v. City of Lockport (228 App. Div. 319 [1930], affd. 254 N. Y. 582) —have held the State liable in negligence where a decayed or defective tree or branch thereof falls on travelers upon the public highway. In both the Messinger and the Julian cases the trunk of the tree was located beyong the limits of the highway but the limbs and tops thereof overhung the travelled portion of the highway. In the Julian case the tree stood seven feet from the edge of the pavement, two and one-half feet outside of the edge of the shoulder and two feet outside the sidewalk line. In both cases there was a preponderance of evidence that the branch which fell from the tree was lifeless and decayed, a condition which, the court held in each instance, should have been observed by the highway maintenance patrolmen.
In this case the State is not being sued for negligence in the maintenance of the highway or for damages to person or property resulting therefrom. On the contrary the claimants, in effect, charge the maintenance forces with an excess of zeal to the point where they mistakenly cut down a good, sound tree. *81 The testimony on this point presents a sharp issue of fact. One of the claimants and two of his neighbors testified that the tree was “sound”, “ sound as this table”, “a perfectly normal tree comparable to all the other trees along the road ”, “ definitely not dangerous ’ ’, the remaining stump 1 ‘ perfectly sound ”, “no disease or wilted foliage ”, “in good condition ”, “ green and growing in the sumiher of 1957 ”. The neighbors testified from daily observation of the tree and although each admitted he had not made a close inspection of it, it cannot be said that either was biased.
Called on behalf of the State to refute this testimony, the maintenance foreman, whose gang of laborers felled the tree, testified that the tree was “ three-quarters dead”; that the limbs were “ all dead in the upper part of the tree ”, just a portion of the trunk was alive toward the bottom. On cross-examination the foreman admitted that he had first noticed the condition of the tree on the day it was cut; that he was in the area “cutting right down through that road. We were cutting trees down all the way through on that road ”; that he had not observed the tree during the Summer, ‘ ‘ that the bark was peeling and all the upper limbs were dead. The tree was leaning towards the highway.” He admitted that the stump was healthy. He was corroborated by the State’s engineer assigned to Wyoming County as resident assistant, who testified that on the day in question he was traveling down Route 238 looking for his gang and found the foreman and asked him how he was coming along and if he had observed any trees on ahead that should in his opinion be removed. The foreman got into the engineer’s car and rode with him. The foreman showed him the tree in question and he ordered the foreman to take it down. He considered it to be in a dangerous condition. On cross-examination it developed that the resident engineer was new to the territory, having been assigned to that county only two weeks earlier. He testified that he was not present when the tree was cut; that he did not observe the trunk or any of the limbs after it was cut; that he gave no particular orders as to its disposition. The two State employees Avere interested witnesses.
Inasmuch as the tree Avas destroyed, the limbs having been burned and the trunk having been sawed into blocks and then burned, there was no opportunity for the presentation of expert testimony as to the tree’s condition. As hereinabove stated, on that point there is a notable conflict in the testimony. After hearing the witnesses and observing their demeanor and after reviewing the stenographer’s transcript of the trial we have *82 concluded that those persons who were acquainted with the neighborhood and who had seen the tree all during the Summer were in a hotter position to testify as to its soundness and health than were the State employees who gave it a one-day cursory examination. Surely if the tree was three quarters dead, if all the branches in the upper part were dead, the people living on the street and acquainted with the neighborhood would have observed the condition. The failure to notify either the property owner or the village or town authorities, either before or after the cutting of the tree, and the extensive cutting on the day in question indicates that the Public Works employees may have been mistaken in their vigilance. Upon the whole case we make a finding that the tree was sound. If the tree was sound it was, of course, an abuse of discretion to cut it down. (Smith v. Ess, 125 N. Y. S. 450 [1910], affd. 157 App. Div. 943.) We find that the tree was sound. We find that its removal was not necessary for highway purposes. In that light the claimants are entitled to recover. The case does not fall within the interdiction of County of Chautauqua v. Swanson (260 App. Div. 124 [1940]) and County of Broome v. McKune (267 App. Div. 13 [1943]).
The only testimony on damages herein is that the building lot with the tree on it was worth $15 a front foot making, for 130 feet, $1,950; that the value of the property without the tree was $1,200 to $1,500. The difference in the value of the land before and after the injury is the proper measure of damages to be applied. (Evans v. Keystone Gas Co., 148 N. Y. 112 [1895]; Nichols v. New York & Pennsylvania Tel. & Tel. Co., 126 App. Div. 184 [1908].) Treble damages may not be recovered. (Pfohl v. Rupp, 166 App. Div. 630 [1915]; Greene v. Mindon Constr. Corp., 19 Misc 2d 228 [1959].)
We find that the claimants have sustained damages in the amount of $600 and direct entry of judgment in that amount against the State of New York.