OPINION OF THE COURT
Henry W. Lengyel, J.
On February 13, 1991, the defendants made application for an order pursuant to CPLR 3211 (a) (1), (2) and (7) dismissing *79 this claim on the grounds that the claim fails to state a cause of action and that the court lacks subject matter jurisdiction; or, in the alternative, for summary judgment in favor of the defendant.
Motion for summary judgment is granted in part for the following reasons.
According to the claim which was filed on October 30, 1990,* claimants were the owners of an improved residential property located at 39 Herkimer Road (also known as 2 Meadow Road) in the Town of Scarsdale. Claimants acquired title to the property by reason of a deed dated June 23, 1986 and which was, on August 5, 1986, recorded in the office of the County Clerk of Westchester County in Liber 8516 of Deeds at page 34. Claimants did not advise what the purchase price of the property was in 1986. However, upon checking at the Westchester County Clerk’s office it was determined that the deed recited a consideration of $377,000 which was confirmed by the $1,508 in transfer tax stamps affixed to the deed. In their filed bill of particulars which was dated January 18, 1991, claimants did provide the following information:
"1. The area owned by claimants before the de facto appropriation is approximately 185 feet in length and 100 feet in width and includes an area of some 18,500 square feet and all fixtures and improvements thereon.
"2. The structures and improvements situated on the premises at the time of the de facto appropriation, and the approximate year of construction of each structure and improvement situated on the premises, are as follows: a two and one-half story frame and brick one family residence with attached one story frame garage (1947), enclosed porch, flagstone patio and walkway (1959), macadam (1959), and stone pier (1967) * * *
"9. Claimants have spent approximately $120,000 over the past two years in an ongoing renovation, decoration and refixturing of the premises and the structures and improvement thereon including, but not limited to, replacing an antiquated boiler, replacing broken windows, renovating an old electric heating system, installing a secondary furnace, replacing flooring, installing insulation and a new heating system, extensive rewiring of electrical systems, removal of a utility pole on the premises, removing dead shrubbery, paint *80 ing the entire interior of the residence and extensive exterior painting, installing carpeting and wallpaper, repairing broken masonry and flagstone, replacing old appliances, replacing defective tile and plumbing fixtures, and extensive repair of termite damage.”
According to the photocopy of a land and improvement survey prepared in late 1929 and updated to May 6, 1986 the north frontage of this property abutted the southerly side of Herkimer Road; and, the northerly boundary of Herkimer Road bordered in part the southerly right-of-way line of the Hutchinson River Parkway (hereinafter Hutch). In 1991 the right-of-way line was the same as it was in 1929. Part of the westerly property line bordered on Herkimer Road and part on Broadmoor Road (now Meadow Road). All of the building improvements on the property were set back from the north property line a distance of 51.12+ feet. At the westerly corner and the approximate center of claimants’ property the right-of-way line was about 105+ feet south of the northbound mainline of the Hutch. At the east corner of said property, it was about 120+ feet south of the northbound mainline. The center point of the residence was about 180+ feet south of said mainline and 160+ feet south of the north exit ramp at Exit 21.
When claimants bought this property in 1986, the entrance and exit ramps which formed Exit 21 were at about the same general location as they are today. However, their configuration was changed by the reconstruction of the Hutch in that they became longer ramps which moved slightly away from claimants’ property.
According to the affidavit of Nicholas Pucino, the Regional Construction Engineer and Parkway Coordinator for Region 8, the State did not appropriate any land from claimants’ property; and, I so find.
The filed claim contains nine causes of action and claimants demanded "Compensatory damages on each cause of action in the amount of $750,000 plus interest thereon to the extent permitted by law [plus] costs and expenses * * * including reasonable attorneys’ fees.”
In their first six causes of action, claimants essentially contended that, because the New York State Department of Transportation (hereafter D.O.T.) refused to emplace noise sound barriers between claimants’ north property line and the Hutch, a de facto appropriation occurred which damaged this *81 property by $750,000. As stated in City of Buffalo v Clement Co. (28 NY2d 241, 253): "However, the concept of de facto taking has traditionally been limited to situations involving a direct invasion of the condemnee’s property or a direct legal restraint on its use * * * and to hold that there can be a de facto appropriation absent a physical invasion or direct legal restraint would, needless to say, be to do violence to a workable rule of law. It is our view that only the most obvious injustice compels such a result” (see also, supra, at 255). It was also stated in Sperry v State of New York (50 AD2d 618, 618-619) that: "[t]here is no claim that the State formally appropriated any of claimants’ property or interest therein. The claimants contend that the noise and vibration emanating from the normal use of highway 1-684 constitutes an appropriation of their properties and a nuisance. We cannot agree * * * Where there has been no partial taking of property by appropriation, an owner whose property adjoins a public highway is not entitled to damages resulting from the depreciation of his property due to noise of cars and trucks passing on the highway”.
In my opinion, the situation complained of by these claimants did not cause such an obvious injustice as to create a de facto appropriation when there was no physical invasion or direct legal restraint. I assume that the claimants were not forced in June 1986 to purchase their residence at a location near Exit 21 of this very busy commuter parkway. They must have known that major reconstruction work was being performed up and down the Hutch in 1986. Mr. Pucino advised their prior counsel, Etti E. Beck, by letter dated April 17, 1989 that: "[t]he basis for providing noise barriers was thoroughly explained during public hearings, public informational meetings and in the Environmental Impact Statement prepared during the planning stage for this project. Your client did not qualify for a noise barrier under the criterion used, which are based on Federal Highway Administration guidelines.” I am generally sympathetic to persons who may have made a "bad deal” when they purchased real estate, particularly their residence. However, my sympathy does not attain the level of requiring taxpayers to bail them out — not only to bail them out but at a profit — when the taxpayers’ representatives have not directly, physically or legally invaded their property.
Before major reconstruction work was started on the parkway in the mid-1980s, the D.O.T. prepared a "Technical Report — Noise” along the Hutch between the Cross County *82 Parkway and the Cross Westchester Expressway. This report was completed in May 1982. Subsequently in August 1983, the D.O.T. issued its "Final Design Report & Final Environmental Impact Statement”. These were not secret documents. They were public records and I believe that responsible real estate brokers and local attorneys knew the extent and breadth of the D.O.T. findings. These two reports were prepared pursuant to the standards and requirements of the Federal Highway Administration as set forth in volume 7, chapter 7 and section 3 of the Federal-Aid Highway Program Manual entitled: "Procedures for Abatement of Highway Traffic Noise and Construction Noise”. In general "[f]ederal funds may be used for noise abatement measures in those situations where: (1) a traffic noise impact has been identified, (2) the noise abatement measures will reduce the noise impact, and (3) the overall noise abatement benefits are determined to outweigh the overall adverse social, economic, and environmental effects of the noise abatement measures” (id., at 17). According to the Federal standards, a design noise level of 70 dBA is acceptable for residential property (id., at 12). The D.O.T.’s 1982 noise report found an existing and predicted noise level for Location 12 (i.e., the residence on Herkimer Road) of 71 dBA. However, the 1983 final design report found, at "Location 12” for "Residences on Herkimer Road”, a noise level of "69 dBA”; and, at page B-15, the D.O.T. design engineers wrote:
"Location No. 12:
"Herkimer Road, Scarsdale
"Two receptors were considered slightly impacted in the DEIS at this location. Subsequent analyses reflect a lesser noise level below the 70 dBA abatement criteria, and therefore, no barrier is warranted”.
As Mr. Pucino wrote in his moving affidavit: "9. Noise studies conducted as part of an environmental impact study for the project resulted in a determination that the subject property was not impacted and that a noise barrier was not warranted at the subject location. In addition, a noise barrier would be of little value because of the extent of the openings necessary to accommodate the exit and entrance ramps.” The decision not to install a noise barrier between claimants’ property and the Hutch was an expert design engineering decision predicated upon a reasonable basis and certainly cannot be held to have created a de facto appropriation of claimants’ real property (see, Friedman v State of New York, 67 NY2d 271, 283-285; Weiss v Fote, 7 NY2d 579, 585, 587).
*83 Claimants also contended in the fifth cause of action that the State substantially narrowed the strip of land between their property and the Hutch and removed "most of the natural barrier of trees and underbrush therefrom”. To the claimants this was negligent, defective and inadequate design work which created a noise nuisance. It was stated in Crowell v State of New York (18 AD2d 7, 9, affd without opn 13 NY2d 1132):
"It is settled in this State that, if there is a partial taking of abutting property, an allowance may be made, in determining the consequential damages to the remaining property, for the damage caused by the removal of shade trees in the public highway (County of Broome v. McKune, 268 App. Div. 810, affd. 293 N. Y. 809; Potter v. State of New York, 14 A D 2d 989, affd. 11 N Y 2d 893).
"We do not believe that this principle should be extended to cover a case in which there has been no taking of any part of the abutting owner’s property. Under sections 150 and 322 of the Highway Law, the abutting owner has an easement of shade from trees within the highway limits and he has the right to harvest the fruit of fruit-bearing trees. This interest enables the abutting owner to recover for injury to the trees caused by third persons (Donahue v. Keystone Gas Co., 181 N. Y. 313; Osborne v. Auburn Tel. Co., 189 N. Y. 393) or caused by the public authorities themselves, by conduct not necessarily connected with the use of the highway for highway purposes (Stevens v. State of New York, 21 Misc 2d 79, affd. 14 A D 2d 823). But the interest of the abutting owner is subject to the power of the public authorities to improve the highway to its entire width and, if the trees are necessarily removed for the purpose of carrying out a highway improvement, there can be no recovery of damages therefor. '[T]recs within the highway limits may be removed by proper public officials without compensating abutting owners if the removal be necessary for highway purposes [citing cases]’ (County of Broome v. McKune, 267 App. Div. 13, 16 [first appeal]).
"This view is consistent with the rule under which the courts deny damages for the impairment of easements of light, air and access due to a change of grade, in the absence of statute (Raymond v. State of New York, 4 A D 2d 62, affd. 4 N Y 2d 961; Sauer v. New York, 180 N. Y. 27, 33, affd. 206 U. S. 536).” (See also, Lucas v State of New York, 44 AD2d 633, 634.)
*84 In my opinion, the State did not narrow the strip of land in question, substantially or otherwise; and, I so find. Furthermore, even if it was narrowed and even if trees and underbrush were lost, under the case law cited above and the factual situation presented in the claim at bar, there was no compensable damage.
The seventh cause of action contends that the State wrongfully entered upon claimants’ property with "heavy construction equipment which remained positioned on and/or immediately adjacent to the Property until August, 1990. This continuing trespass * * * caused physical damage to claimants’ Property and evidences the constructive and/or de facto appropriation of the Property by the State”. However, as Mr. Pucino pointed out at page 2 of his affidavit in the moving papers: "These highway improvements and the construction activities associated therewith took place on State lands and public rights of way. The State’s contractor only utilized a portion of the right of way between Herkimer Road and the entrance ramp for periodic parking of equipment. This area is separated from claimants’ property by Herkimer Road”. One has but to look at the map attached as exhibit B of the notice of motion to realize the truth of Mr. Pucino’s statement. The only manner in which heavy construction equipment could have been positioned on claimants’ land would have been to drive it across Herkimer Road (a public road) and park it on the 18,500+ square foot improved parcel. I do not believe such was done. If it had been, claimants certainly would not have alleged that the trespass was a constructive and/or de facto appropriation. In my opinion, this was another effort to establish a foundation under claimants’ meritless efforts to establish a de facto appropriation; and, I so find.
In their eighth cause of action claimants incorporated the noise barrier allegations contained in the first seven causes of action; and also contended that the "project has been designed in a negligent or defective manner, so as to create an unreasonable risk of loss of vehicular control when exiting from the northbound Hutchinson River Parkway at Exit 21”. Claimants opined that this condition was caused by "an improperly small exit ramp radius and other defective features, with the result * * * that in April 1989, a vehicle was unable to stop at the end of the ramp and * * * hurtled across Meadow Road onto the Property, destroying a stone column and several trees on claimants’ Property and causing other serious damages, as well as mental anguish, fear and anxiety to claimants and to *85 their family * * * This accident also evidences the constructive and/or de facto appropriation of the Property in that [it] is now, in effect, used by the State as 'run-off' or 'overshoot' land with regard to the exit ramp". Mr. Pucino advised in paragraphs 7 and 8 of his affidavit that "The new exit ramp was provided with a deceleration lane to allow motorists to reduce speed prior to reaching the local street. In addition, a guide rail has been installed on the outer portion of the ramp to help prevent vehicles from running off the ramp toward the Organek property * * * The incident referred to in Paragraph 25 of the claim occurred during the course of a high speed police chase while the ramp was still under construction and the various safety devices were not yet installed".
If this cause of action relates to the tort and damage caused by an errant vehicle in April 1989, it must be dismissed for lack of jurisdiction. The notice of intention to file a claim was filed on January 11, 1990 well past the 90-day filing requirement (see, Court of Claims Act § 10 [3]). When the tort action per se is removed from consideration, as it has been, the only remaining factor is another effort to build a foundation under claimants’ meritless efforts to establish a de facto appropriation; and, I so find.
In the ninth cause of action, claimants contend that the defendant’s design, engineering and/or construction of the drainage and run-off system for the Hutch has caused repeated incursions of water onto subject property. Claimants allege this has rendered the property uninhabitable. Mr. Pucino contends that the State has done nothing to exacerbate what seems to have been a preexisting condition; and, as I look at photograph "1-2" in exhibit E of the opposing affidavit, the property does seem to have been built well above the mainline of the Hutch. However, claimants have here stated a cause of action for water damage; and, as there is a question of fact, summary judgment will not lay against the ninth cause of action — but only in that respect. It should be clear that all reference to noise barriers, constructive and de facto appropriation repeated and realleged or actually stated in said cause of action is considered as being without merit and stricken.
For all of the reasons stated above, I find that the causes of action first through eighth, inclusive; and that part of the ninth cause of action which does not relate to water damage, are totally without merit and I grant summary judgment dismissing them with prejudice. I direct the claimants to file *86 an amended claim within 40 days after service of notice of entry of this order. Said amended claim shall only relate to the alleged water damage. It shall not refer to or relate to sound barriers and noise; and/or, to de facto or constructive appropriations.
Frankly, if claimants had any remedy relating to the installation of sound or noise barriers it was in the State Supreme Court in a CPLR article 78 proceeding. Claimants’ counsel wrote at page 4 of his affidavit "the facts * * * herein * * * clearly demonstrate * * * the 'runaround’ * * * which claimants have been accorded in seeking some sort of equitable determination regarding the very serious safety and noise problems at Exit 21” (emphasis added). The Court of Claims does not have extensive equitable powers; the State Supreme Court does. In my opinion, counsel chose the wrong forum— except, of course, in relation to water damage.

 The notice of intention to file a claim was filed on January 11, 1990. The motion papers do not indicate when the notice of intention and/or the claim were served on the State of New York.