R. Waldron Herzberg, J.
Plaintiffs bring this action in trespass to recover damages against the Town of Kinderhook and its Town Superintendent of Highways for destroying 18 wild cherry trees standing on land owned by plaintiffs and bounded by a town highway. Although the defendants admit the removal of these trees, they contend the laws of this State permitted them to do so under the circumstances without the consent or permission of the owners and without compensation.
On the 29th day of September, 1964, the defendant Bink, as Superintendent of Highways of defendant town, with the approval of the defendant town uprooted and destroyed 18 wild cherry trees located along the south side of a town highway, known as Birchwood Boad, in the Town of Kinderhook without the consent or permission of the plaintiffs. These trees were removed so that Birchwood Boad could be widened and thereby make it possible for the town to receive financial aid from the State under the Erwin road program. Bink testified that during his 10-year tenure of office he trimmed these trees on several occasions and mowed around and behind them so as to keep the brush down. Furthermore he stated that the travelled portion of Birchwood Boad during this period was 16 feet with no clearly defined ditch on the south side.
*957 At the time of this occurrence the plaintiff, Dorothy Van Allen, owned 78 acres of land in the Town of Kinderhook. A portion of this land was situated to the west of State Highway Route No. 9 and bounded on the north for a distance of 676.35 feet by Birchwood Road. George Kent Van Allen, the other plaintiff and a son of Dorothy Van Allen, owned three acres of land part of which also bordered on Birchwood Road for a distance of 100 feet. Along this road, between a wild cherry tree located on the property of Arthur Campbell to the west of plaintiffs’ land and a sugar maple tree standing on property to the east of plaintiffs’ land, there stood prior to September 29, 1964 a row of at least 18 wild cherry trees. These trees had bordered Birch-wood Road (formerly known as Pruyn Road) since at least the year 1935 when George Van Allen, now deceased, planted additional wild cherry trees to the row already in existence.
Since the deeds into plaintiffs described their land as bounded by Pruyn Road, now called Birchwood Road, plaintiffs own the fee of the land to the center of this highway. When land is bounded by a street or road, it is presumed that title conveyed extends to the center of the street or road. (See Bissell v. New York Cent. R. R. Co., 23 N. Y. 61, 64 [1861]; Hennessy v. Murdock, 137 N. Y. 317, 322-323 [1893]; Van Winkle v. Van Winkle, 184 N. Y. 193, 203-205 [1906].)
Furthermore the plaintiffs and their predecessors in title had a right to plant and maintain trees along Birchwood Road for the purpose of improving their property. In Palmer v. Larchmont Elec. Co. (6 App. Div. 12, 17 [1896], revd. on other grounds 158 N. Y. 231), Brown, P. J., writing for the court said: “ On the side of the road the land owner has, however, substantial rights of property both in the surface and in the soil. In addition to the ordinary easements of light, air and access, he may, on a country highway, plant shade trees, cultivate the sides of the road and do anything to improve or beautify it or his own property so long as his acts do not impair the public right of passage. (Jackson v. Hathaway, 15 Johns. 447.) ”
Defendant Bink on the trial complained that the trees hindered the clearing of snow during the Winter time. In support of his complaint defendants introduced in evidence a photograph which shows the condition along Birchwood Road on New Year’s Day in 1962. This condition could have been eliminated promptly by the Town Superintendent of Highways and the town by following the procedure outlined in sections 147 and 148 of the Highway Law. However, it should be noted that the plaintiffs would have been entitled to compensation for any damages sus *958 tained by the removal of these trees pursuant to these provisions of law.
To justify the removal of these trees the defendants contend that at the time of their uprooting Birchwood Road was a public town highway by “user”. This question must be determined from the evidence submitted on the trial and from a construction of the applicable statute. Whether a road becomes a public highway by “ user ” depends upon proof of compliance with the provisions of section 189 of the Highway Law which reads: “ All lands which shall have been used by the public as a highway for the period of ten years or more, shall be a highway, with the same force and effect as if it had been duly laid out and recorded as a highway, and the town superintendent shall open all such highways to the width of at least three rods.” (Emphasis added.)
The burden of establishing “ user ” in the town rests upon the defendants. “ To deprive an owner of the beneficial use of his property by prescriptive easement created through user requires a preponderance of evidence clearly establishing the requisites for prescription.” (Katz v. Town of Brookhaven, 213 N. Y. S. 2d 98, 99, affd. 15 A D 2d 534 [1961].)
The method by which a court determines the width of a public highway has been spelled out in several decisions in this State. However applying the method outlined presents difficulties as is illustrated in this matter. In the recent case of Schillawski v. State of New York (9 N Y 2d 235, 238 [1961]), the opinion of majority reads: “ Where a road has obtained its character as a public highway by user, its width is determined by the width of the improvement (People v. Sutherland, 252 N. Y. 86; cf. Beisheim v. People, 26 Misc 2d 684). But where the road has been laid out under a statute, it is the statute and not the user that determines the width (Walker v. Caywood, 31 N. Y. 51 [1865]).”
The instant case resembles in many respects the situation before the court in Jones v. Cederquist (1 Misc 2d 1020 [1956]) where the Town of Ellicott and its Town Superintendent of Highways attempted to open a town highway to a width of 3 rods (49½ feet) without compensation to the adjoining owners of the land where the travelled portion of the road plus the ditches did not exceed 30 to 35 feet and in so doing a row of shade trees on each side of the highway would be destroyed. The court, in its opinion at page 1026 granting plaintiffs a permanent injunction against defendants, said: “ It is clear that the legislative intent in enacting section 189 of the Highway Law was not to authorize the town superintendent to appro *959 priate lands not actually in use as roads without the consent of the owner thereof or by due process of law compensating the owner therefor. To do otherwise would be talcing real property without due process of law in violation of the Federal and State Constitutions. In the instant case it is apparent that the use of Moon Road did not exceed but is limited to the use by the public of that which is the gravelled road itself, the shoulders, and the ditches. ’ ’
After reading that part of the statute ‘ ‘ All lands which shall have been used by the public as a highway ” (Highway Law, § 189) together with its interpretation by the Court of Appeals in Schillawski v. State of New York (supra) that “Where a road has obtained its character as a public highway by user, its width is determined by the width of the improvement ”, I conclude that use by the public and width of improvement refers only to the travelled portion of the road together with the ditches and shoulders but not to shade trees along its sides.
Therefore I find that the defendants have not established by a preponderance of the evidence that they made improvements to Birchwood Road for a period of 10 years or more prior to the 29th day of September, 1964 sufficient to encompass the trees within the term “ user ”. The acts of the defendant Bink in maintaining the travelled portion of the highway at a width of 16 feet, mowing between and around the trees on occasions to keep the brush down and trimming the trees “ several times ” were insufficient to establish by prescription an easement in the trees. Sustained dominion by the town was required for the prescriptive period (see People v. Sutherland, 252 N. Y. 86 [1929]). On the other hand I find that the town did by “ user ” obtain a prescriptive easement over at least the travelled portion of Birchwood Road and that part of the shoulder to the south of the highway extending to the northerly trunks of the trees.
However, even assuming arguendo that the acts of the Town Superintendent constituted “user” under section 189 of the Highway Law, the defendants are not in a position to succeed in this action. Two survey maps were introduced in evidence by the parties. One was prepared by Roy Gilbert, a licensed surveyor, for the plaintiffs; the other vouched for by Bernard J. Kelleher, Columbia County Superintendent of Highways in behalf of the defendants.
Gilbert’s map establishes the northern boundary of the Van Allen property along Birchwood Road as described in plaintiffs’ deed. This line extends 776.35 feet in a westerly direction commencing at an iron pipe located at the northeasterly corner of Kent Van Allen’s land and continuing to an iron pipe standing *960 at the northwesterly corner of Dorothy Van Allen’s property. Defendants’ survey map also connects these 2 iron posts by a line. In addition defendants’ map plots the location of 15 of the 18 wild cherry trees, showing that 14 stood partially south of the boundary line fixed by the 2 iron posts and not wholly within the claimed right of way of the town. The other tree stood wholly on plaintiffs ’ land.
In respect to the 14 trees which stood partly on the claimed right of way and partly on plaintiffs’ property, neither the Van Allens nor the defendants could destroy or remove these trees without the consent of the other. To do otherwise would constitute the commission of a trespass. (Dubois v. Beaver, 25 N. Y. 123, 126-128 [1862]; Robinson v. Clapp, 65 Conn. 365 [1895]; Scarborough v. Woodill, 7 Cal. App. 39 [1907]; Blalock v. Atwood, 154 Ky. 394 [1913]; Harndon v. Stultz, 124 Iowa 440 [1904].)
The law covering the situation existing in this case is well stated in Robinson v. Clapp (supra) at pages 376-377: “ First, in reference to the tree. Upon the subject of the rights of the parties in a tree situated as this is, it is said in Washburn on Real Prop., Vol. 1, § 7a: ‘ The law as to growing trees may be regarded so far peculiar as to call for a more extended statement of its rules as laid down by different courts. * * * In the first place, trees which stand wholly within the boundary line of one’s lands belong to him, although their roots and branches may extend into the adjacent owner’s land. * * * But the adjacent owner may lop off the branches or roots of such trees up to the line of his land. If the tree stand so nearly upon the dividing line between the lands that portions of its body extend into each, the same is the property, in common, of the landowners. And neither of them is at liberty to cut the tree without the consent of the other, nor to cut away the part which extends into his land, if he thereby injures the common property in the tree. ’ ’ ’
And at pages 379-380 the court continued: “ It would really seem to come to this, that each of the landowners upon whose land any part of a trunk of a tree stands has an interest in that tree, a property in it, equal in the first instance to, or perhaps rather identical with, the part which is upon his land; and in the next place embracing the right to demand that the owner of the other portion shall so use his part as not unreasonably to injure or destroy the whole ”.
Having decided that the defendants committed a trespass upon plaintiffs’ land, we now proceed to the question of damages. If the plaintiffs sustained damages by reason of the trespass com *961 mitted by defendants in destroying the 18 wild cherry trees, the amount must be determined by finding the difference in the value of the land owned by plaintiffs before and after the injury. (Evans v. Keystone Gas Co., 148 N. Y. 112, 116 [1895]; Nichols v. New York & Penn. Tel. & Tel. Co., 126 App. Div. 184, 189 [1908]; Stevens v. State of New York, 21 Misc 2d 79, 82, affd. 14 A D 2d 823 [1961].)
The disparity of the testimony offered by the real estate appraisers for both parties makes the assessment of damages difficult. Plaintiffs’ expert testified that the 81 acres of land were worth $58,000 before the removal of the trees and $52,000 thereafter resulting in damages amounting to $6,000. On the other hand defendants’ expert valued the land at $25,350 before and the same amount after with no loss.
From the record I find that the plaintiffs owned a total of 81 acres of level land in the Town of Kinderhook, part located to the east of State Highway Route No. 9 and part to the west. The section lying west of this main highway was also bounded for a distance of 776.35 feet by Birchwood Road. Furthermore I agree with plaintiffs’ expert that the land bordering on BirchAvood Road was suitable for a real estate development and that these trees added to the land’s value. These trees according to a neighbor, Arthur Campbell, were healthy, approximately 35 to 40 feet tall and some were 2 feet in diameter. From the credible evidence I conclude that plaintiffs ’ property had a fair market valuation of $30,000 before the 18 trees were removed and a valuation of $28,500 after the destruction, resulting in a direct loss to plaintiffs in the amount of $1,500.
The ToAvn Superintendent left the stumps of the trees on plaintiffs’ land. I find from the evidence that the reasonable cost of removing these dead tree stumps, will be the amount of $465.
Judgment for plaintiffs against the defendants in the amount of $1,500, with costs. Plaintiffs may also enter a judgment in the amount of $465, without costs in the event defendants fail to remove the stumps of the trees from plaintiffs’ land within 60 days after entry of this judgment. All motions upon which decision was reserved at the trial are resolved in accordance with the foregoing.