Paul G. Weiner, Esq. Town Attorney, Milan
You have written in relation to a dispute between the town which you represent and an owner of land abutting a town highway concerning the width of that highway and the propriety of certain repairs and maintenance performed by the town on such road.
Your letter indicates that in 1957 the road in question was widened by the town to its present width of 16 feet with 5 foot shoulders. In 1981, the landowner widened a pond, which we assume is located on his property, onto the existing shoulder of the road and, in certain places, to within several inches of the paved roadbed. You state that the existence of this deep pond so close to the road created a serious traffic hazard and a potential flooding problem and also jeopardized the town's insurance coverage. Acting upon the recommendations of the county department of public works, the town undertook to rectify this hazardous condition by erecting guide rails and restoring the shoulder along the affected portion of the road. On more than one occasion the landowner has caused the water level of the pond to rise to the level of the roadbed by placing a vertical extension on the invert of the culvert pipe laid by the town beneath the road, resulting in the partial immersion of the guide rails. To prevent the destruction of the rails and shoulders and to minimize the risk of flooding, the town has lowered the water level by removing the extension placed on the invert. The present situation is that the landowner has partially blocked the culvert, resulting in the water level's rising, but at a slower pace.
It is the landowner's position that the town's rights extend only to the paved portion of the road and not to the shoulders, guide rails and invert of the culvert pipe, which he claims are all on his property. In a subsequent telephone conversation with this office, you indicated that the road has never been formally dedicated but has been used by the public and maintained by the town since prior to 1957.
You ask whether the town has a legal right to use and maintain shoulders of at least five feet in width and whether the town acted lawfully in restoring the shoulder, erecting guide rails and lowering the water level in order to protect the highway and ensure the public safety.
Assuming that since 1957 the road has been continuously used by the public and continuously maintained by the town, it may have become a highway "by use" in 1977 upon the running of the twenty year (now ten years) statutory period of prescription under Highway Law, § 189. (As to the requirement of maintenance, see Palmer v Palmer, 150 N.Y. 139
[1896] and Gardner v Suddaby, 70 A.D.2d 990 [3d Dept, 1979], appeal dismissed, 48 N.Y.2d 706 [1979].) However, whether a highway has become such by use cannot be determined by this office since that is a factual question totally dependent upon the circumstances of your case. Goldrichv Franklin Gardens Corp., 115 N.Y.S.2d 72 (Sup Ct, Nassau Co, 1952), reversed on other grounds 282 App. Div. 698 (2d Dept, 1953).
If the road is in fact a highway by use, then the width of the prescriptive easement so acquired has generally been held to include the portion actually used (Schillawski v State of New York, 9 N.Y.2d 235
[1961]), along with the traveled portion and whatever land is necessarily used or incidental thereto for highway purposes (Nikiel v City ofBuffalo, 7 Misc.2d 667 [Sup Ct, Erie Co, 1957]; Van Allen v Town ofKinderhook, 47 Misc.2d 955 [Sup Ct, Columbia Co, 1965]; 1971 Op Atty Gen [Inf] 102). This has been held to carry with it, in addition to the traveled way, the shoulders (Van Allen v Town of Kinderhook, supra; Yearsv Waite, 14 Misc.2d 393 [Sup Ct, Wayne Co, 1958]) and the usual width of the highway in the locality or such width as is reasonably necessary for the safety and convenience of the traveling public and for ordinary repairs and improvements (Nikiel v City of Buffalo, supra).
We believe, therefore, that the extent of the right of way which may have been acquired by the town includes, at a minimum, the shoulders and whatever land is necessary for the safety of the public, assuming that the requisites of public user and maintenance have been satisfied. That being the case, we believe the town acted properly in restoring the shoulder of the road. Highway Law, § 140(1), (2) and (5) imposes upon a town superintendent of highways a general duty of care and maintenance of town highways and culverts and requires that such culverts be kept open. This duty extends to the care and maintenance of all town highways, including those acquired by prescriptive easement under Highway Law, § 189 (1975 Op Atty Gen [Inf] 155).
To the extent that the easement acquired by user encompasses those areas where the guide rails were erected and where the culvert pipe is located, we believe the town also acted lawfully under Highway Law, § 140(1), (2) and (5) in erecting the guide rails and in removing obstructions to the culvert pipe for the purposes of protecting the road and ensuring the public safety. See, also, Rising v Moreau,68 Misc. 284 (Co Ct, Saratoga Co, 1910) and Foster v Webster,44 N.Y.S.2d 153 (Sup Ct, Broome Co, 1943). The scope of the easement, however, is also a question of fact. We specifically note that under Highway Law, § 2(4), a "highway" by definition includes culverts having a width of opening of twenty feet or less, the approaches of any culvert beginning at the back of the abutments and, in certain circumstances, the pavement over any such culvert.
If the facts are such that the culvert is not within the easement, then the town superintendent is authorized to enter upon private lands for the drainage of the highway only in accordance with the procedures established under Highway Law, § 147.
We conclude that the width of a town highway by use includes, at a minimum, the shoulders of the road and whatever land is necessary for the safety of the traveling public. A town superintendent is authorized to make repairs, erect safety barriers and remove obstructions to drainage within the boundaries of such highway. Entry upon private lands for drainage work is authorized only in accordance with Highway Law, §147.
The Attorney General renders formal opinions only to officers and departments of the State government. This perforce is an informal and unofficial expression of views of this office.